BETTY JEWEL WELLS, Plaintiff v. WILLIAM ARNOLD WELLS, Defendant

No. COA98-230

(Filed 2 March 1999)

**1. Appeal and Error— appealability—interlocutory order— post-separation support—specific performance of separation agreement**

The trial court's grant of defendant's specific performance counterclaim in an action arising from a separation agreement and a subsequent post-separation support claim was properly reviewable on appeal even though not referenced in plaintiff's formal notice of appeal where the order was a nonappealable interlocutory order indisputably involving the merits and necessarily affecting the final judgment and which was challenged within an assignment of error. The portion of the order denying plaintiff's post-separation support motion was not before the court on appeal where plaintiff neither referenced in her assignments of error nor argued in her appellate brief any assertion of error regarding that denial on that date. Although the better practice would be to designate each order appealed from in a notice of appeal, where the intent to appeal an intermediate interlocutory order is clear from the record, such order may be reviewed upon appeal of a final judgment notwithstanding failure of the order to be specifically mentioned in the notice of appeal.

**2. Divorce— alimony and support—notice of hearing**

A portion of a trial court order granting defendant's claim for specific performance of a separation agreement was vacated as being outside the authority of the trial court where plaintiff contended that she had no reason to believe that the hearing was to be determinative of any issue other than post-separation support and nothing in the record reflects that defendant's specific performance action was tried upon notice or with the express or implied consent of the parties.

**3. Divorce— alimony—post-separation support hearings— not binding on subsequent proceedings**

The trial court erred by entering summary judgment on plaintiff's alimony claim based upon findings regarding reconciliation and the validity of a separation agreement in a prior post-separation support proceeding. Upon a post-separation support motion,

the trial court must inquire into the case and weigh the circumstances presented against the statutory factors to determine issuance of a PSS award, but such consideration of the then-existing circumstances decides the issues for the PSS hearing only.

### 4. Collateral Estoppel and Res Judicata— post-separation support hearing—subsequent proceedings

The trial court erred by granting summary judgment on an alimony claim on the basis of collateral estoppel arising from a previous post-separation support proceeding. PSS rulings act as temporary determinations on the issues and those orders are interlocutory and do not constitute a final judgment.

Appeal by plaintiff from summary judgment filed 21 November 1997 by Judge Rebecca W. Blackmore in New Hanover County District Court. Heard in the Court of Appeals 8 October 1998.

*John K. Burns, for plaintiff-appellant.*

*Lineberry and White, L.L.P., by Chas. M. Lineberry, Jr., for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals the trial court's 21 November 1997 grant of summary judgment in favor of defendant. Plaintiff contends the trial court erred by ruling that "collateral estoppel precludes [her] from relitigating" issues previously ruled upon at a postseparation support (PSS) hearing. We reverse the trial court.

Pertinent undisputed facts and relevant procedural history include the following: Plaintiff and defendant were married 14 September 1965 and separated 27 October 1990. In May 1992, the parties executed a separation agreement (the agreement), the terms of which included, *inter alia,* waiver of temporary and permanent alimony and the requirement that defendant pay plaintiff $500.00 per month for five years, retroactive to October 1990. These payments were made each month until October 1993.

On 15 October 1993, defendant moved into plaintiff's apartment, remaining there until on or about 7 March 1994, when he obtained his own residence. In April 1994 and subsequent months, defendant made the $500.00 payments required by the agreement.

WELLS v. WELLS

[132 N.C. App. 401 (1999)]

On 4 October 1995, plaintiff filed a "Complaint for Alimony and Motion for Postseparation Support" pursuant to N.C.G.S. § 50-16.1A (1995). The section became effective as to civil actions filed on or after 1 October 1995, on which date N.C.G.S. § 50-16.1 (*repealed by* 1995 N.C. Sess. Laws ch. 319, § 1, effective October 1, 1995), the alimony *pendente lite* (APL) statute, was repealed.

In a separate action, defendant was granted an absolute divorce from plaintiff on 13 October 1995. Plaintiff filed a calendar request for the PSS motion on 8 November 1995, seeking to be heard 20 November 1995. Defendant subsequently filed an "Answer and Counterclaim" on 13 November 1995, asserting, *inter alia*, execution of the agreement as "a complete bar to the Plaintiff's claims under N.C.G.S. § 50-16.1A *et seq.*," *see* N.C.G.S. § 50-16.6(b) (1995) ("[a]limony, postseparation support, and counsel fees may be barred by an express provision of a valid separation agreement . . . so long as the agreement is performed"), and asserting a counterclaim for specific performance of the agreement.

The parties agree that at the 20 November 1995 hearing the trial court heard live testimony, that defendant relied upon the agreement as a defense to an award of PSS, and that the issue was raised regarding whether the parties' period of joint residence constituted a reconciliation. *See Stegall v. Stegall*, 100 N.C. App. 398, 403-04, 397 S.E.2d 306, 309-10 (1990), *disc. review denied*, 328 N.C. 274, 400 S.E.2d 461 (1991), and *In re Estate of Adamee*, 291 N.C. 386, 391, 230 S.E.2d 541, 545 (1976) (reconciliation of parties voids executory provisions of a separation agreement).

In an order filed 12 January 1996, the trial court included the following pertinent findings of fact:

20. The parties, notwithstanding their common residence from 15 October 1993 to 7 March 199[4] [*sic*], have not reconciled, and have continuously acted in accordance with the terms and conditions of the Separation Agreement.

21. . . . . Plaintiff accepted the housing and resided with the Defendant for financial reasons only.

22. The Separation Agreement that the parties entered into on or about 21 May 1992 has remained in full force and effect.

The court further concluded as a matter of law that:

> 3. The Defendant is entitled to specific performance of the Separation Agreement . . . on the grounds that the parties' common residence does not qualify as a reconciliation, and that the terms and conditions contained in the Separation Agreement constitutes a complete bar to Plaintiff's claims for post-separation support.

The trial court thereupon denied plaintiff's motion for PSS. In addition, it ordered that "[d]efendant's claims for specific performance of the Separation Agreement are hereby granted."

On 8 July 1996, defendant moved for summary judgment on plaintiff's alimony claim. Defendant argued there remained no issue of material fact in view of the trial court's determination at the earlier hearing that there had been no reconciliation and that the agreement containing plaintiff's waiver of alimony was enforceable.

At the summary judgment hearing on 21 November 1997, the trial court found as fact that

> 3. At a hearing in November 1995, on Plaintiff's claim for post-separation support, testimony was solicited, evidence was presented, counsel gave argument on the facts concerning whether the parties had reconciled. Consequently the facts were actually litigated by the parties.
>
> . . . .
>
> 5. The resolution of the issue of reconciliation was essential to the determination of specific performance . . . . As a result, these issues are now precluded from further litigation in Plaintiff's claim for permanent alimony.

The trial court then concluded as a matter of law that:

> 2. Collateral Estoppel precludes the Plaintiff from relitigating the issue of specific performance of the parties'[][*sic*] May 1992 Separation Agreement, and hence, Plaintiff's claim for permanent alimony.

Based on the foregoing, the trial court granted defendant's motion for summary judgment and denied plaintiff's claim for permanent alimony. Plaintiff appeals.

**[1]** Preliminarily, we address defendant's suggestion that plaintiff's failure to enter notice of appeal upon entry of the trial court's 12 January 1996 order precludes our consideration thereof. In *Rowe v. Rowe*, 131 N.C. App. 409, 507 S.E.2d 317 (1998), this Court held the order of a trial court granting PSS was interlocutory and not subject to immediate appeal:

> Postseparation support is only intended to be temporary and ceases when an award of alimony is either allowed or denied by the trial court . . . . Therefore, since a postseparation support order is a temporary measure, it is interlocutory . . . and it is not appealable.

*Id.* at 411, 507 S.E.2d at 319; *see also Stephenson v. Stephenson*, 55 N.C. App. 250, 252, 285 S.E.2d 281, 282 (1981) (alimony *pendente lite* awards interlocutory and not immediately appealable).

Although plaintiff did not attempt immediate appeal of the 12 January 1996 order, in light of the attack in her second assignment of error upon the trial court's grant of defendant's specific performance claim in said order, we note the recent decision of our Supreme Court in *Floyd and Sons, Inc. v. Cape Fear Farm Credit*, 350 N.C. 47, 510 S.E.2d 156 (1999).

*Floyd* addressed the issue of jurisdiction of the appellate court to review earlier trial court orders in a matter wherein

> the notice of appeal referred solely to the trial court's final judgment entered after the jury's verdict and made no reference to other orders entered at trial which plaintiffs sought to appeal.

*Id.* at 50, 510 S.E.2d at 158. The Supreme Court examined the nature of the earlier order complained of, determined it to have been interlocutory and not subject to immediate appeal, and concluded, citing N.C.G.S. § 1-278 (1996) (upon "appeal from a judgment, the [appellate] court may review any intermediate order involving the merits and necessarily affecting the judgment"), that

> a party seeking to appeal from a nonappealable interlocutory order must wait until final judgment is rendered and may then proceed as designated in [N.C.R. App. P.] 3(d).

*Id.* at 51, 510 S.E.2d at 158. Under *Floyd*, therefore, although we caution that the better practice without doubt would be to designate each order appealed from in an appellant's notice of appeal, where the intent to appeal an intermediate interlocutory order "is quite clear

from the record," *id.* at 52, 510 S.E.2d at 159, such order may be reviewed upon appeal of a final judgment notwithstanding failure of said order to be "specifically mentioned in the notice of appeal," *id.*

By contrast with the trial court's 12 January 1996 grant of defendant's specific performance claim, plaintiff has neither referenced in her assignments of error nor argues in her appellate brief any assertion of error regarding denial of her PSS motion on that same date. That portion of the trial court's 12 January 1996 order thus is not before us. *See* N.C.R. App. P. 10(a) ("scope of review on appeal is confined to a consideration of those assignments of error set out in the record").

However, we conclude that we may properly consider the trial court's 12 January 1996 allowance of defendant's specific performance counterclaim. This order was "final . . . as to one or more but fewer than all of the claims," N.C.G.S. § 1A-1, Rule 54(b) (1990), and therefore interlocutory and not subject to immediate appeal, *see Fliehr v. Fliehr*, 56 N.C. App. 465, 466, 289 S.E.2d 105, 106 (1982) (order for child support "entered in conjunction with orders awarding alimony *pendente lite*" not appealable "until entry of a final order on the plaintiff's claim for permanent alimony"), save under circumstances not present *sub judice, see First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 246, 507 S.E.2d 56, 60 (1998) (interlocutory order immediately appealable only if trial court properly certifies "there is no just reason to delay the appeal" or order "deprives the appellant of a substantial right which would be lost absent immediate review"). As a nonappealable interlocutory order indisputably "involving the merits and necessarily affecting the [final] judgment," G.S. § 1-278; *Floyd*, 350 N.C. at 51, 510 S.E.2d at 159, which is challenged within plaintiff's second assignment of error in the instant appeal, the trial court's 12 January 1996 grant of defendant's specific performance counterclaim thus is properly reviewable on appeal even though not referenced in plaintiff's formal notice of appeal, *see id.* at 52, 510 S.E.2d at 159.

[2] We therefore examine the trial court's directive in the 12 January 1996 order that

> Defendant's claims for specific performance of the Separation Agreement are hereby granted, and Plaintiff is hereby ordered and directed to specifically perform and abide by the terms and conditions of the Separation Agreement entered into on 21 May 1992.

As noted above, plaintiff instituted her action 4 October 1995; on 8 November 1995, she filed and served upon defendant a calendar request seeking hearing of the PSS motion at the 20 November 1995 Non-Jury Session of New Hanover County District Court, "Monday Motion Session," indicating one hour as the "length of time required" for hearing. On 13 November 1995, defendant filed his Answer and Counterclaim, asserting the agreement as an affirmative defense to plaintiff's claims for PSS and alimony as well as counterclaiming for specific performance of the agreement.

The record contains no indication defendant filed either a motion for summary judgment as to plaintiff's PSS motion and alimony claims based upon the agreement or served notice of any motion hearing or trial upon plaintiff. Indeed, in arguing her second assignment of error, plaintiff aptly complains,

> plaintiff had no reason to believe that the November 1995 hearing was [to be] determinative of any issue other than the issue of her entitlement to postseparation support.

On 12 January 1996, *nunc pro tunc* 20 November 1995, the trial court filed its order denying PSS to plaintiff and granting defendant's counterclaim for specific performance of the agreement. The order recited the matter had been heard at the "20 November 1995 Monday Motion Session of the District Court for New Hanover County."

It is fundamental that

> [t]he right to notice and an opportunity to be heard on motions filed in a lawsuit is critically important to the non-movant and cannot be considered an insubstantial or inconsequential omission on the part of the movant and the court. The non-movant "has a right to resist the relief sought by the motion and principles of natural justice demand that his rights not be affected without an opportunity to be heard . . . ."

*Pask v. Corbitt*, 28 N.C. App. 100, 104, 220 S.E.2d 378, 382 (1975) (citations omitted). Further,

> if the adverse party appears for any reason to be entitled to be heard in opposition to the whole or any part of the relief sought, the application must be made on notice to such adverse party.

*Id.* at 104, 220 S.E.2d at 381 (citations omitted).

In the case *sub judice*, the record fully sustains plaintiff's position that

> there was no notice to the plaintiff that the hearing was to include a final adjudication, for both her postseparation support and her permanent alimony claims, of the critical issues of reconciliation and enforcement of the separation agreement.

As plaintiff notes, the case had been pending a mere six weeks at the time of hearing and defendant had filed his answer and counterclaim only a week earlier, *see* N.C.G.S. § 1A-1, Rule 6(d) (1990) (written motion and notice of hearing thereof "shall be served not later than five days" before the time fixed for hearing), at which point the time for discovery had barely commenced, *see* Gen. R. Pract. Super. and Dist. Ct. 8 (discovery is "to begin promptly" and is "authorized to begin even before the pleadings are completed"). Plaintiff's notice of hearing served upon defendant indicated the matter at issue was plaintiff's PSS motion and that one hour was the estimated time of hearing. Defendant neither filed nor served upon plaintiff any corresponding notice to hear or request for trial of his specific performance action. Indeed, the matter was not placed on a trial calendar, but rather the "Monday Motion Session of the District Court," presumably limited to the hearing of motions, *see* Gen. R. Pract. Super. and Dist. Ct. 6 ("[m]otions may be heard . . . either at the pre-trial conference or on motion calendar").

While defendant emphasizes that evidence was presented regarding his affirmative defense grounded upon the agreement, and while participation in a hearing may constitute waiver of notice of a motion, *see Brandon v. Brandon*, 10 N.C. App. 457, 461, 179 S.E.2d 177, 180 (1971), the valid agreement defense indisputably was applicable to the matter actually noticed for hearing, *i.e.*, the PSS motion. No transcript of the 20 November 1995 hearing was filed with this Court, and nothing in the instant record indicates either plaintiff or defendant considered the latter was simultaneously advancing his specific performance action at the hearing or that he sought a ruling thereon from the trial court. Rather, it appears defendant was resisting the PSS motion with evidence of what he contended was a valid separation agreement, *see* G.S. § 50-16.6(b), and that the trial court "gratuitously declared," *Dorn v. Dorn*, 52 N.C. App. 370, 372, 278 S.E.2d 281, 283 (1981), that "defendant [wa]s entitled to specific performance of the Separation Agreement."

In short, nothing in the record reflects that defendant's specific performance action was tried upon notice or with the express or implied consent of the parties. Accordingly, and particularly in view of the lack of notice and other circumstances discussed above, we vacate that portion of the trial court's 12 January 1996 order granting defendant's specific performance claim as void and of no effect in consequence of being outside the authority of the trial court. *See Briggs v. Briggs*, 234 N.C. 450, 67 S.E.2d 349 (1951) (at APL hearing where APL denied for want of proof of grounds, trial court lacked jurisdiction and authority to dismiss alimony claim because case "was not before the court on final hearing on the merits"), *Bond v. Bond*, 235 N.C. 754, 755, 71 S.E.2d 53, 54 (1952) (trial court at APL hearing "correctly denied" that motion but improperly dismissed alimony claim, the latter being ordered "reinstated . . . for trial" because case was not before trial court for final hearing on merits and court was without jurisdiction to dismiss alimony claim), *Allred v. Tucci*, 85 N.C. App. 138, 143, 354 S.E.2d 291, 295, *disc. review denied*, 320 N.C. 166, 358 S.E.2d 47 (1987) (citing *Hanson v. Yandle*, 235 N.C. 532, 535, 70 S.E.2d 565, 568 (1952)) (where court acts in excess of its authority "its judgment . . . is void and of no effect"; "a void judgment may be attacked whenever and wherever it is asserted, without any special plea"), and *Amodeo v. Beverly*, 13 N.C. App. 244, 245, 184 S.E.2d 922, 923 (1971) (pre-trial order "amount[ing] to summary judgment against plaintiff on at least one of the issues" vacated in that "[d]efendants had not moved for summary judgment and plaintiff had no notice that such was being considered"). Defendant's counterclaim for specific performance is thus reinstated for resolution in the trial court.

**[3]** There remains the issue of the binding effect, if any, of the findings and conclusions supporting the trial court's 12 January 1996 denial of plaintiff's PSS motion, not challenged on appeal. In essence, plaintiff argues the trial court's PSS order was not a final ruling, but rather an interlocutory order effective only until the rendering of a permanent alimony decision. Therefore, continues plaintiff, determinations contained in the PSS order would not be binding in subsequent proceedings, and the trial court erred in entering summary judgment as to plaintiff's alimony claim because there continued for purposes of that claim a genuine issue of material fact as to the reconciliation of the parties and the consequent issue of enforceability of the agreement. *See* N.C.G.S. § 1A-1, Rule 56(c) (1990), and *Goins v. Puleo*, 130 N.C. App. 28, 32, 502 S.E.2d 621, 623 (1998).

Defendant responds that the trial court's PSS order regarding reconciliation and validity of the agreement was conclusive because these issues were fully litigated and resolved in defendant's favor, thereby barring plaintiff's alimony claim under the principle of collateral estoppel. Comparison of the legislative purposes and procedural directives regarding PSS and APL may be helpful to resolution of this question.

APL was statutorily defined as "alimony ordered to be paid pending the final judgment of divorce . . . ," G.S. § 50-16.1(2) (repealed), the purpose thereof being to afford funds to a dependent spouse for subsistence pending trial and to employ counsel. *Haywood v. Haywood*, 95 N.C. App. 426, 429, 382 S.E.2d 798, 800 (1989), *rev'd in part on other grounds*, 333 N.C. 342, 425 S.E.2d 696 (1993).

Section 50-16.1A defines PSS as

. . . spousal support to be paid until the earlier of either the date specified in the order of postseparation support, or an order awarding or denying alimony.

G.S. § 50-16.1A(4). PSS, as was APL, is "primarily designed to function as a means of securing temporary support for a dependent spouse in an expedited manner." Sally B. Sharp, *Step By Step: The Development of the Distributive Consequences of Divorce in North Carolina*, 76 N.C.L. Rev. 2090 (1998). Thus PSS, like APL, is "only intended to be temporary and ceases when an award of alimony is either allowed or denied by the trial court." *Rowe*, 131 N.C. App. at 411, 507 S.E.2d at 319.

Further, in view of their temporary nature, PSS orders are interlocutory and not subject to immediate appeal. *Id.* Likewise, orders granting APL were interlocutory and not immediately appealable. *Stephenson*, 55 N.C. App. at 252, 285 S.E.2d at 282 (orders allowing APL interlocutory and not immediately appealable).

In addition, upon application for a PSS award

the court may base its award on a *verified pleading, affidavit,* or other competent evidence.

N.C.G.S. § 50-16.8 (amended 1995) (emphasis added). This is akin to the previously prescribed procedure upon application for an APL award:

the parties shall be heard *orally, upon affidavit, verified plead-ing,* or other proof.

G.S. § 50-16.8(f) (*amended by* 1995 N.C. Sess. Laws ch. 319, § 12, effective October 1, 1995). In other words, under both statutory schemes, the trial court might grant or deny awards based upon paper filings at abbreviated hearings conducted early in the litigation process and prior to significant discovery.

Moreover, as a noted authority in domestic relations law points out, given the "relative brevity" of the factors guiding PSS awards, *see* N.C.G.S. § 50-16.2A (1995), compared with the extensive list of fif-teen factors governing the amount of an alimony award, *see* N.C.G.S. § 50-16.3A(b) (1995), it is apparent that

> postseparation support contemplates a rather truncated exami-nation of the parties' needs and assets. [Further,] given the fact that this section clearly looks at short-term, rather easily calcu-lable, economic characteristics of the individuals to a marriage, the statutory factors [set out in G.S. § 50-16.2A] coincide very neatly with the purposes of postseparation support—to function almost as a stop-gap measure to provide some support to a dependent spouse prior to the discovery of the data necessary for an alimony . . . hearing.

S. Sharp, 76 N.C.L. Rev. at 2092.

Next, the concept of changed circumstances affecting entitle-ment to spousal support which may occur between the PSS order and the alimony trial also indicates that the temporary character inherent in APL similarly underlies the new PSS statute. In PSS motion hearings, as was the case in APL hearings, the trial court renders a preliminary determination as to whether a dependent spouse is entitled to support pending a final hearing on the merits. *See* G.S. §§ 50-16.2A(c) and 50-16.3A(a).

The pertinent PSS statute provides:

> . . . a dependent spouse is entitled to an award of postseparation support if, based on consideration of the factors specified in sub-section (b) of this section the court finds that the resources of the dependent spouse are not adequate to meet his or her reasonable needs and the supporting spouse has the ability to pay.

G.S. § 50-16.2A(c).

The APL statute allowed temporary support for

(a)(2) . . . [a] dependent spouse [that] has not sufficient means whereon to subsist during the prosecution or defense of the suit . . . .

(b) The determination of the amount and the payment of [APL] shall be in the same manner as alimony . . . .

N.C.G.S. § 50-16.3(a)(2) and (b) (*repealed by* 1995 N.C. Sess. Laws ch. 319, § 1, effective October 1, 1995).

Under APL,

[c]hanges in circumstances . . . which occur[red] after the entry of an order for alimony *pendente lite* m[ight be considered to] . . . affect the dependent spouse's entitlement to support, *as there ha[d] been no permanent adjudication of that entitlement.*

*Brown v. Brown,* 85 N.C. App. 602, 605, 355 S.E.2d 525, 527, *disc. review denied,* 320 N.C. 511, 358 S.E.2d 516 (1987) (emphasis added); *see also Sprinkle v. Sprinkle,* 17 N.C. App. 175, 178, 193 S.E.2d 468, 471 (1972) (issues at APL hearing "not the same as those presented by a claim for . . . alimony"). In like manner, changes in circumstance occurring between issuance of a PSS order and the permanent alimony hearing may well affect dependency status as well as other material issues, *see* S. Sharp, 76 N.C.L. Rev. at 2036-2040, thereby mitigating against the conclusion that entitlement findings by the trial court during a PSS hearing are final and binding at subsequent proceedings.

We also note that the issue of "fault" may play a different role in determining entitlement to PSS and to alimony. For example, the trial court must refuse to grant alimony upon a finding the dependent spouse engaged in illicit sexual behavior, G.S. § 50-16.3A(a), whereas such behavior operates merely as a consideration in determining whether to award PSS, G.S. § 50-16.2A(d).

Further, although a jury trial was not sought in the pleadings *sub judice,* G.S. § 50-16.3A(d) provides:

In the claim for alimony, either spouse may request a jury trial on the issue of marital misconduct as defined in G.S. 50-16.1A. If a jury trial is requested, the jury will decide whether either spouse or both have established marital misconduct.

**WELLS v. WELLS**

[132 N.C. App. 401 (1999)]

However, G.S. § 50-16.2A(d) states:

At a hearing on postseparation support, the judge shall consider marital misconduct by the dependent spouse occurring prior to or on the date of separation in deciding whether to award post-separation support . . . . When the judge considers these acts by the dependent spouse, the judge shall also consider any marital misconduct by the supporting spouse in deciding whether to award postseparation support and in deciding the amount of postseparation support.

In thus mandating resolution of the factual circumstance of marital misconduct by the trial court at PSS hearings, but retaining the right to a jury trial for ultimate factual disposition of marital misconduct issues, the General Assembly unmistakably signaled its intent that factual determinations by the trial court at PSS hearings would not conclusively resolve those issues nor bind the ultimate trier of fact thereon. *See N.C. Div. of Sons of Confederate Vets. v. Faulkner*, 131 N.C. App. 775, 779, 509 S.E.2d 207, 210 (1999) ("a well-established tenet of statutory construction [is] that the intent of the General Assembly controls," and "[i]n ascertaining this intent, we 'assume that the Legislature comprehended the import of the words it employed' ").

Similarly, "the trial court's findings in an [APL] motion [we]re solely for the purpose of that motion." *Perkins v. Perkins*, 85 N.C. App. 660, 666, 355 S.E.2d 848, 852, *disc. review denied*, 320 N.C. 633, 360 S.E.2d 92 (1987). Further, the determinations set forth in an APL order "form[ed] no part of the ultimate relief sought, [and] d[id] not affect the final rights of the parties." *Peele v. Peele*, 216 N.C. 298, 300, 4 S.E.2d 616, 618 (1939); *see also Bumgarner v. Bumgarner*, 231 N.C. 600, 601, 58 S.E.2d 360, 360 (1950) (facts found at APL hearing "not binding on the parties nor receivable in evidence on the trial of the issues"), *Flynt v. Flynt*, 237 N.C. 754, 757, 75 S.E.2d 901, 903 (1953) (ruling at APL hearing had "no bearing whatever on the merits" of permanent alimony claim "for the very simple reason that [the alimony claim] was not involved in any way in the matter there heard and decided"), *Hall v. Hall*, 250 N.C. 275, 277, 108 S.E.2d 487, 488 (1959) (APL findings "not binding on the parties"), and *Harris v. Harris*, 258 N.C. 121, 124, 128 S.E.2d 123, 125 (1962) ("ultimate rights of the parties at the final hearing" not affected by APL findings).

In comparing PSS to APL, therefore, we hold PSS effectively replaced APL and must in general operate under the same principles.

To treat PSS otherwise would deter many dependent spouses from seeking needed support for fear they would be bound by a ruling based on incomplete evidence.

Prior to applying the foregoing to the case *sub judice*, however, we observe that one writer has perceived a distinction between the PSS and APL statutes giving rise, in the opinion of the writer, to creation of a "window" through which PSS orders might become final. *See* Nancy E. LeCroy, Note, *Giving Credit Where Credit is Due: North Carolina Recognizes Custodial Obligations as a Factor in Determining Alimony Entitlements*, 74 N.C.L. Rev. 2128, 2143-44 n.105 (1995). The writer points out that the APL statute contained explicit language providing that such awards were to be paid "pending the final judgment of divorce. . . ." G.S. § 50-16.1(2) (repealed). However, the PSS statute contains no exact termination event, but rather provides payment "until the *earlier of either* the date specified in the order . . . or an order awarding or denying alimony." G.S. § 50-16.1A(4) (emphasis added). Therefore, concludes the writer,

> if an effective date of termination for postseparation support payments is specified in neither the postseparation support order, nor in the order awarding or denying alimony, the postseparation support payments may continue indefinitely if the dependent spouse never sues for alimony (or at least until an effective alimony award would have terminated, that is, when the dependent spouse remarried, cohabitated, or died).

N. LeCroy, 74 N.C.L. Rev. at *id.*

Notwithstanding, we view the hypothetical occurrence of the foregoing circumstance as arising not from the intended application of the statute, but rather from failure of the trial court to designate a termination date in the PSS order. The statutory language, "until the *earlier of either*," G.S. § 50-16.1A(4) (emphasis added), would appear to contemplate as the better practice that each PSS order set forth a termination date against which the trial court in a subsequent alimony proceeding may gauge which event occurred "earlier" for purposes of termination of PSS.

We turn now to defendant's contention that the parties fully litigated and the court considered and ruled upon the merits of the valid separation agreement defense during the PSS hearing, and that

the trial court in subsequent proceedings would be bound by the earlier rulings. Based upon the preceding discussion, we reject this argument.

During APL hearings, the trial court was to "look into the merits of the action, so far as they [we]re then disclosed" so as to determine whether to grant temporary alimony. 24 Am. Jur. 2d *Divorce and Separation* § 566 (1983). Similarly, upon a PSS motion, the trial court must inquire into a case and weigh the circumstances presented against the statutory factors in order to determine issuance of a PSS award. However, such consideration of the then-existing circumstances does not act to "determine in advance the ultimate outcome of the [alimony] suit," *id., see also Flynt*, 237 N.C. at 757, 75 S.E.2d at 903 (ruling at APL hearing had "no bearing whatever on the merits" of permanent alimony claim), but rather decides the issues for the PSS hearing only.

[4] Notwithstanding, defendant counters that plaintiff is collaterally estopped from re-litigating the reconciliation issue at later proceedings because it was determined at the PSS hearing. We do not agree.

Under collateral estoppel, "a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit . . . ." *Thomas M. McInnis & Associates, Inc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 557 (1986). However, as we have determined that PSS rulings act as temporary determinations on the issues and that PSS orders are interlocutory and do not constitute a "final judgment," *see Rowe*, 131 N.C. App. at 411, 507 S.E.2d at 319; *see also Coleman v. Coleman*, 74 N.C. App. 494, 497, 328 S.E.2d 871, 873 (1985) ("[g]iven the interlocutory nature" of APL order, it does not constitute a "final judgment, order, or proceeding" which might properly be the "subject of a G.S. 1A-1, Rule 60(b) motion" for relief from judgment), collateral estoppel would not operate to preclude subsequent litigation of the issues of the parties' reconciliation and validity of the agreement. Accordingly, the trial court erred in granting summary judgment in favor of defendant on the basis of collateral estoppel.

In sum, the trial court's 12 January 1996 allowance defendant's specific performance claim is vacated, the court's 21 November 1997 grant of summary judgment in favor of defendant is reversed, and this case is remanded for further proceedings not inconsistent with the opinion herein.

Reversed and remanded.

Judges McGEE and HORTON concur.