McGEE, Judge.
Karen Quinn DeBruhl (plaintiff) and Thurman Ray DeBruhl (defendant) were married on 8 August 1987. They separated on 11 June 1999 and subsequently divorced. Four children were born of the marriage. Plaintiff filed a complaint on 28 January 1999 seeking, among other things, divorce from bed and board, post separation support and alimony, child custody, and child support. A temporary child support order was entered on 28 September 2000, ordering defendant to pay $600 per month in child support, and $2,400 in back child support. Plaintiff and defendant agreed to a consent order entered 19 January 2001 that continued the temporary order for child support and ordered defendant to pay the $2,400 in back child support "from his share of the proceeds of the sale of the marital home at closing." Plaintiff and defendant agreed to another consent order on 23 April 2002 that ordered the $2,400 in back child support be paid by plaintiff "filing a proof of claim in . . . defendant's bankruptcy action[.]" This 23 April 2002 consent order further ordered "[t]hat if . . . plaintiff does not receive payment from the Bankruptcy Court for [the $2,400 in child support], . . . plaintiff may pursue any and all other legal avenues available to her for the repayment of said support."
A hearing on child support was scheduled for 28 May 2002. Plaintiff served a subpoena on defendant for his appearance at the 28 May 2002 hearing, and for production of various financial records. Upon defendant's motion, the hearing was continued to 8 July 2002, at which time the trial court began hearing evidence about the child support issue. Plaintiff had subpoenaed defendant's computer hard drive because it allegedly contained information about defendant's income and his commodities trading business. Defendant failed to produce the hard drive at the 8 July 2002 hearing, and the trial court allowed a computer technician to go to defendant's home to copy the hard drive. Plaintiff had also subpoenaed defendant's mother to testify at the 8 July 2002 hearing. Defendant's mother, though not a party to this action, requested that she be granted the opportunity to obtain counsel before testifying. The trial court suspended the hearing until a later date to permit defendant's mother to obtain counsel, and to allow review of defendant's computer hard drive. Plaintiff sent defendant a motion in the cause dated 4 October 2002, asking the trial court to order defendant to immediately provide "all documentation concerning [defendant's] brokerage and commodities accounts or any securities accounts [defendant] may have[.]" A hearing was held regarding this motion on 17 October 2002, and the trial court ordered defendant to provide plaintiff with the documents and information on or before 16 November 2002. The Lenoir County Case Manager (case manager) sent a notice of hearing and certification of judicial assignment to plaintiff and defendant, along with a certificate of service dated 21 November 2002. This notice mistakenly stated that a hearing on a motion in the cause was scheduled in Wayne County on 11 December 2002. Plaintiff sent a notice of hearing and certification of judicial assignment to defendant on 22 November 2002, notifying defendant of a hearing on child support on 11 December 2002 in Wayne County. Plaintiff also subpoenaed defendant's mother to testify at the 11 December 2002 hearing.
Defendant telephoned the case manager to see what issue was scheduled to be heard on 11 December 2002. The case manager, not aware of the notice of hearing and certification of judicial assignment sent by plaintiff, told defendant that the matter to be heard was a motion in the cause. Defendant asked about future hearings on child support and the case manager represented that all future hearings on child support would take place in Lenoir County. There was no motion in the cause pending at the 11 December 2002 hearing. The trial court heard the issue of child support and ordered defendant to pay child support in the amount of $1,204 per month beginning on 1 December 2002. The trial court also ordered defendant to pay the $2,400 in back child support, as set out in the 28 September 2000 order, in $200 monthly installments beginning 1 February 2003, and to pay plaintiff's attorney's fees. This order was entered on 30 January 2003 and served upon defendant on 10 February 2003.
Defendant filed his notice of appeal from the 30 January 2003 order on 12 March 2003. He subsequently moved to have the trial court stay enforcement of and/or vacate the 30 January 2003 order, contending that he did not have due notice as to the issues to be heard on 11 December 2002. A hearing was held on 9 July 2003 regarding defendant's motions. The trial court denied the motion to stay the enforcement of the order, and denied the motion to vacate the order as it related to child support. However, the trial court did vacate the order as to attorney's fees, finding that defendant did not have notice that the issue of attorney's fees would be heard at the 11 December 2002 hearing.
In denying defendant's motions to stay enforcement of and to vacate the 30 January 2003 order as it related to child support, the trial court made the following findings of fact at its 9 July 2003 hearing:
15. That on November 22, 2002 counsel for the plaintiff forwarded to the defendant a Notice of Hearing and Certification of Judicial Assignment for hearing on child support on December 11, 2002 at the Wayne County Courthouse at 9:30 a.m., Courtroom No. 2.
16. That said Notice shows that a copy was forwarded to the defendant as certified by counsel for the plaintiff.
17. That on November 21, 2002 a Notice of Hearing and Certification of Judicial Assignment was forwarded both to the plaintiff through her counsel and directly to the defendant himself for a hearing on a Motion in the Cause for December 11, 2002 in Wayne County, North Carolina by the case manager.
18. That this Court heard testimony from the case manager David P. Davis that he had had a phone conversation with the defendant prior to the December 11, 2002 hearing date and during that conversation the defendant asked the case manager what was to be heard and the case manager advised the Motion in the Cause.
19. The defendant did not make inquiry of the case manager as to whether or not the issue of child support was to be heard, in fact, he never raised the same even though a copy of the Notice of Hearing and Certification of Judicial Assignment showing the issue of child support was going to be set for hearing for December 11, 2002 in Wayne County, North Carolina had been forwarded to him.
20. That the defendant was given due notice of the December 11, 2002 hearing as to child support.
21. That this matter began its hearing on the 28th day of May, 2002 and was continued from time to time as a result of the defendant's failure to comply with subpoenas that had been issued.
Other pertinent facts are set forth in the discussion below. We note that defendant does not present arguments on his assignments of error four, five, and six, and thereby abandons them pursuant to N.C.R. App. P. 28(b)(6).
I.
Defendant first argues that the 30 January 2003 order should be vacated because he did not have notice that the issue of child support was going to be heard on 11 December 2002, and thus the trial court was acting outside its authority in issuing its order for child support. Defendant cites Wells v. Wells, 132 N.C. App. 401, 512 S.E.2d 468, disc. review denied, 350 N.C. 599, 537 S.E.2d 495 (1999), in which he contends that when "a civil issue is tried without notice or [without] the express or implied consent of both parties, an order resulting from such hearing is void and of no effect as being outside the authority of the trial court." Defendant argues that the present case is analogous to Wells. We disagree.
The plaintiff in Wells instituted an action for post separation support (PSS) on 4 October 1995. Id. at 407, 512 S.E.2d at 472. On 8 November 1995, the plaintiff "filed and served upon [the] defendant a calendar request seeking hearing of the PSS motion at the 20 November 1995 Non-Jury Session of New Hanover County District Court[.]" Id. The defendant, in his answer and counterclaim filed on 13 November 1995, sought specific performance of a separation agreement in which the parties had waived temporary and permanent alimony as a defense to the plaintiff's claim for PSS. Id. At a 20 November 1995 hearing, "the trial court heard live testimony, that [the] defendant relied upon the [separation] agreement as a defense to an award of PSS, and that the issue was raised regarding whether the parties' period of joint residence constituted a reconciliation." Id. at 403, 512 S.E.2d at 470. The trial court then found and concluded that despite sharing a common residence for more than four months, the couple had not reconciled and the separation agreement was therefore still in effect. The trial court held that the defendant was entitled to specific performance of the separation agreement and that the agreement operated as a complete bar to the plaintiff's claim for PSS. Id. at 403-04, 512 S.E.2d at 470. We vacated this order, finding that the plaintiff did not have any notice that the issue of specific performance of the separation agreement would be heard on 20 November 1995. Specifically, we wrote:
Plaintiff's notice of hearing served upon defendant indicated the matter at issue was plaintiff's PSS motion and that one hour was the estimated time of hearing. Defendant neither filed nor served upon plaintiff any corresponding notice to hear or request for trial of his specific performance action. Indeed, the matter was not placed on a trial calendar, but rather the `Monday Motion Session of the District Court,' presumably limited to the hearing of motions. . . .
Wells, 132 N.C. App. at 408, 512 S.E.2d at 472. We further stated: "It is fundamental that `the right to notice and an opportunity to be heard on motions filed in a lawsuit is critically important to the non-movant and cannot be considered an insubstantial or inconsequential omission on the part of the movant and the court.'" Id. at 407, 512 S.E.2d at 472 (quoting Pask v. Corbitt, 28 N.C. App. 100, 104, 220 S.E.2d 378, 382 (1975).
The case before us, however, is distinguishable from Wells in that defendant in this case had due notice that the 11 December 2002 hearing involved child support. Notice of hearing in a child support matter must be provided in the manner set forth in N.C.Gen. Stat. § 50-13.5(d) (2003), which states: "Service of process in civil actions for the custody of minor children shall be as in other civil actions. Motions for support of a minor child in a pending action may be made on 10 days notice to the other parties and compliance with G.S. 50-13.5(e)." Furthermore, notice must be given in compliance with the requirements of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 50-13.5(e)(2) (2003). Written notices must be "served upon each of the parties," but it is sufficient to provide service by "mailing [the notice] to the party at the party's last known address[.]" N.C. Gen. Stat. § 1A-1, Rule 5(a) and (b) (2003).
Plaintiff mailed a notice of hearing and certification of judicial assignment to defendant on 22 November 2002. This notice specified that a hearing on the issue of child support was scheduled for 11 December 2002 at the Wayne County Courthouse at 9:30 a.m. Plaintiff thus complied with the timing requirements for giving notice as set forth in N.C.G.S. 50-13.5(d). Additionally, plaintiff complied with the required method for service in that plaintiff mailed this notice to defendant's last known address, which was the same address where defendant had received numerous other court related documents, including the case manager's notice of hearing and certification of judicial assignment sent on 21 November 2002. Notice to defendant was thus sufficient.
Moreover, evidence suggests that defendant had actual and constructive notice that the issue of child support was scheduled to be heard on 11 December 2002. Defendant argues that he only had notice that a motion in the cause would be heard on 11 December 2002. However, defendant appeared at the Wayne County Courthouse on 11 December 2002, was almost immediately called for direct examination by plaintiff's attorney, and did not object. As evidenced in the 11 December 2002 transcript, the trial court and plaintiff were ready to proceed with the recessed hearing on child support, and defendant did not object to proceeding. Defendant, rather than again being ordered to produce documents or information, was called to testify about his financial situation. Defendant only objected to having the issue of child support heard after he had been questioned for a considerable amount of time. Defendant's conduct suggests that he had actual notice.
Additionally, defendant had constructive notice that the issue of child support would be heard on 11 December 2002 because the child support matter had been pending since May 2002. The issue of child support was originally to be heard on 28 May 2002, but due to defendant's failure to comply with discovery requests and subpoenas to produce documents and information, the hearing was rescheduled for 8 July 2002. After hearing some evidence concerning the child support issue on 8 July 2002, the trial court granted a recess in the matter to allow data to be retrieved from defendant's computer hard drive after defendant had failed to comply with a subpoena to furnish the hard drive to the trial court. Plaintiff subsequently filed a motion in the cause on 8 October 2002 stating that defendant had indicated that his only income was from trading in commodities but that he had not produced any documentation of his earnings. The motion in the cause was heard on 17 October 2002 during which defendant was ordered to provide plaintiff with
any and all information concerning any brokerage, securities, commodities or trading accounts that the defendant may have himself or may have been or be trading for any others for the past two years showing what activity has gone on in these accounts along with any income he may have from the same.
The trial court further ordered that defendant provide this information to plaintiff's counsel "on or before November 16, 2002." Child support was the only issue pending between plaintiff and defendant, and the next hearing in the matter was scheduled for 11 December 2002. It is logical to conclude that the matter of child support would continue to be heard at the next appearance in court.
Furthermore, although defendant suggests that he could not have had notice that the issue of child support was to be heard because he did not bring any "material . . . witnesses, such as his mother" to the hearing, defendant produced a doctor's note explaining why his mother could not appear in court. The fact that defendant knew that his mother was subpoenaed to "appear and testify" is also evidence of constructive notice of the hearing. Defendant's mother had previously been subpoenaed to testify at the 8 July 2002 hearing, which defendant knew was a hearing on the issue of child support. At the 8 July 2002 hearing, defendant's mother refused to testify without an attorney present. The trial court agreed to allowed defendant's mother the opportunity to speak with an attorney but cautioned her and defendant that her attendance would be required at another hearing. The trial court also stated in defendant's presence that a new subpoena would be issued for defendant's mother but that it would "be issued for the same day that we come back for [defendant.]" Thus, when defendant's mother was subpoenaed to appear in the Wayne County Courthouse on 11 December 2002, defendant had notice of the 11 December 2002 hearing.
As the trial court found at the 9 July 2003 hearing, "defendant was given due notice of the December 11, 2002 hearing as to child support." Thus, the trial court was acting well within the scope of its authority in issuing its order for child support, and we reject defendant's argument.
II.
Defendant next assigns as error the trial court's conclusion that defendant's "ability to earn income [was] at least $2,875.00 per month." Defendant argues that this conclusion of law, upon which the amount of child support ordered was based, was in error in light of the evidence and findings of fact.
As our Court recently stated, "[t]he trial court is given broad discretion in child custody and support matters." Meehan v. Lawrance, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2004) (COA03-1318) (filed 21 September 2004). We will uphold an award of child support when the trial court's findings of fact sustain the conclusions of law. Dixon v. Dixon, 67 N.C. App. 73, 79, 312 S.E.2d 669, 673 (1984). We will only disturb the child support amount awarded by a trial court if there was "gross abuse of discretion." Sawyer v. Sawyer, 21 N.C. App. 293, 295, 204 S.E.2d 224, 225, cert. denied, 285 N.C. 591, 205 S.E.2d 723 (1974). A trial court abuses its discretion only when "the challenged actions are manifestly unsupported by reason." Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).
While defendant asserts that the trial court abused its discretion, he does not argue how the trial court's actions are "manifestly unsupported by reason." Nor does defendant dispute the trial court's conclusion that defendant "intentionally depressed his income for purposes of avoiding child support." Rather, defendant argues that the trial court erred in calculating the amount of child support to be paid.
A trial court is required to use the North Carolina Child Support Guidelines (the Guidelines) to determine the amount of child support payments, and
[p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.
N.C. Gen. Stat. § 50-13.4(c) (2003). Typically, the amount of child support is determined by the parents' income. North Carolina Child Support Guidelines. However, the Guidelines provide that:
If either parent is voluntarily unemployed or underemployed to the extent that the parent cannot provide a minimum level of support for himself or herself and his or her children when he or she is physically and mentally capable of doing so, and the court finds that the parent's voluntary unemployment or underemployment is the result of a parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation, child support may be calculated based on the parent's potential, rather than actual, income. . . . The amount of potential income imputed to a parent must be based on the parent's employment potential and probable earnings level based on the parent's recent work history, occupational qualifications and prevailing job opportunities and earning levels in the community. If the parent has no recent work history or vocational training, potential income should not be less than the minimum hourly wage for a 40-hour work week.
North Carolina Child Support Guidelines, para. 3 (Potential or Imputed Income).
In the present case, defendant argues that the findings of fact in the trial court's 30 January 2003 order, "do not establish any basis upon which [d]efendant's gross income, imputed or otherwise, may be reasonably calculated." We disagree. The trial court made several findings of fact in support of its conclusion of law that defendant's potential "ability to earn income [was] at least $2,875.00 per month." The trial court found in part:
7. That at the time of that Order the Court found that the defendant was not presently employed although he held and continues to hold a B.S. degree in agronomy from North Carolina State University and had been the owner and operator of a multimillion dollar fabrication corporation.
. . . .
9. That the Order further found that the defendant indicated he was going to become employed as an insurance salesman and that he would have other income.
10. That since the entry of the September 21, 2000 Order the defendant never completed his training to become an insurance salesman and has worked on a part-time consulting basis with a company called Grower Services, Inc. assisting Jan Sutton in the marketing of heat exchangers.
11. That the defendant stopped doing any work for Grower Services, Inc. in October of 2001.
. . . .
13. That the defendant advised this Court that he was unemployed but that he was a commodities broker, trading in stock index futures not in crop commodities.
14. This field is a new field for the defendant, one he has no prior experience in and has nothing to do with his B.S. degrees in agronomy from N.C. State or his prior business in the fabrication of agricultural equipment.
. . . .
18. That since September of 2000 the defendant has invested $8,000.00 to $10,000.00 in the trading of commodities and at present has only $900.00 left in his commodities trading account and still continues to pursue that as a career.
19. That the defendant contended to this Court that he was working on a methodology for commodities trading that in the future was going to provide him with significant income.
20. The defendant's contention is in error as over the past two years he stated he had worked on this for at least 11 hours a day, 5 days a week and has only lost money.
. . . .
24. That even though the defendant had no income during the year 2001 from January through November the defendant [spent] $31,631.22 out of his bank account in 11 months.
25. That the defendant testified that the funds he spent were monies that he had borrowed from his mother or was paid by Grower Services Inc.
26. That the plaintiff has been to court on at least three occasions since May of 2002 with reference to child support and has had to depose Jan Sutton and fight for every piece of information received from the defendant about his income.
27. The only information the defendant has provided concerning his income has been the information from Grower Services, Inc. from 2001, a few account statements from the defendant's commodities account and the defendant's bank statements.
28. The defendant paid the lot rent on a mobile home at Emerald Isle owned by someone else in the amount of $2,500.00.
29. That the defendant continues to take the children to Emerald Isle on weekends to this trailer owned by someone else.
30. The defendant continues to operate a pontoon Boat which is owned by Jan Sutton's husband and pays for costs of operation of the same.
31. The defendant lives in a home that rents for $810.23 per month.
32. The defendant operates a Suburban automobile for which he pays a monthly payment of $488.80.
33. The defendant has cable t.v. and cable Internet service.
34. The defendant owns land in Jones County with a cabin on the same and continues to take the children there.
35. The defendant is able-bodied and capable of working with no physical defect.
36. The defendant has disregarded his parental obligation to support his children by:
(a) Failing to exercise his reasonable capacity to earn income;
(b) Deliberately avoiding his financial responsibilities;
(c) Acting in deliberate disregard for this obligation to support his children;
(d) Refusing to seek or to accept gainful employment;
(e) Willfully refusing to secure or take a job;
(f) Deliberately continuing for two years with a business plan that has only lost money;
(g) Intentionally depressing his income.
37. The defendant has an earning capacity at least in the amount of what he has spent from his checking account from January '01 to November '01.
38. That based on the fact that the defendant has spent $31,631.22 in 11 months (from January '01 to November '01) from his bank account, this Court finds his monthly income to be $2,875.00 per month.
Faced with a defendant who failed to exercise his reasonable capacity to earn income, refused to secure gainful employment, deliberately persisted in a business plan that lost money, and who repeatedly did not produce any of the documentation on income that was requested of him, the trial court considered defendant's standard of living, and the amount of money passing through his bank account to determine defendant's potential income. Defendant spent $31,631.22 over the course of eleven months in 2001. The trial court amortized this amount over a twelve-month period to arrive at a potential income of $2,875 per month. Furthermore, though claiming not to have any income, defendant maintained a lifestyle where he made monthly payments of: $810.23 for rent,$488.80 for his Suburban, and $600 for child support. He also paid for cable television and cable Internet access every month. Without accounting for food or other expenses, these monthly payments totaled approximately $2,000. Thus, the trial court's finding that defendant had a potential income of at least $2,875 per month was reasonable, and the trial court did not abuse its discretion in basing its determination of child support on this potential income.
III.
Defendant also assigns as error the trial court's conclusion that it was reasonable for defendant to pay a portion of plaintiff's attorney's fees. Defendant acknowledges that the trial court, at the 9 July 2003 hearing, vacated the attorney's fee awarded to plaintiff in the 30 January 2003 order because defendant did not have notice that the issue of attorney's fees would be heard on 11 December 2002. Defendant nevertheless argues that should we determine that the trial court did not have jurisdiction on 9 July 2003, the trial court erred in its 30 January 2003 conclusion of law regarding attorney's fees. As the trial court did have jurisdiction on 9 July 2003 to hear defendant's motions regarding the 30 January 2003 order, we dismiss defendant's assignment of error.
Affirmed.
Judges McCULLOUGH and ELMORE concur.
Report per Rule 30(e).