651 A.2d 415

**Mary Ann DRONEY**

v.

**John H. DRONEY.**

**No. 539, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 3, 1995.

674

Jay B. Shuster, Baltimore, for appellant.

Brian J. Murphy, Baltimore, for appellee.

Argued before MOYLAN, HARRELL and HOLLANDER, JJ.

HOLLANDER, Judge.

This case presents for our consideration the novel question of whether a mobile home may ever change its character from that of a motor vehicle—an item of personalty—to a fixture upon realty. We answer that it can; whatever the mobile home may once have been, its character was transformed here by the actions of the parties in affixing it to the realty. Based on the undisputed facts of this case, we hold that the mobile home in question lost its vehicular status and became a fixture upon the land when the parties removed its wheels, bolted it to the ground, attached utility lines, and made other significant changes and improvements to it. Accordingly, we perceive no error in the trial court's determination that Mary Ann Droney, appellant, committed a contempt of court by failing to transfer the home to her former husband as part of a divorce settlement. We explain.

### *Factual Summary*

Ms. Droney and John H. Droney, appellee, married on October 3, 1959. In 1969, the Droneys purchased land in Garrett County, Maryland (the "Property"). Thereafter, in 1987, they purchased a "double-wide" mobile home, which was financed and subject to a recorded security interest. The

mobile home was transported to the Property, where the Droneys removed its wheels and bolted it to concrete pilings. The parties made substantial renovations to the mobile home—water, electric, and septic lines were hooked up, gutters and downspouts were attached, a 2,000–pound stone fireplace was installed, new siding was added to the exterior, front and rear decks were built, and shrubs were planted. Although the home apparently was never moved after it was attached to the pilings, the home remained titled as a vehicle with the Maryland Motor Vehicle Administration ("MVA").

On October 3, 1988, Ms. Droney initiated divorce proceedings. By July, 1990, the parties had reached a settlement as to the disposition of their property. Essentially, the parties agreed that Mr. Droney would transfer to Ms. Droney his interest in land located in Baltimore County, which was improved by a house, and Ms. Droney was to transfer her interest in the Property to Mr. Droney, plus $1,000. Accordingly, on January 22, 1991, the Circuit Court for Baltimore County (Judge H. Kemp McDaniel, presiding) entered a Judgment of Absolute Divorce. The Judgment, after reciting that it had been entered "upon the agreement of the parties," ordered the parties, *inter alia*, to transfer to each other the interests each had in certain real estate. It provided as follows:

\* \* \* \* \* \*

2. It is further Ordered, Adjudged and Decreed that Mary Ann Droney shall deed all of her right, title and interest in and to *all real estate* owned by the parties in Garrett County, Maryland. . . .

3. That John H. Droney shall deed unto Mary Ann Droney all of his right, title and interest in and to a parcel of *real estate* located in Baltimore County, Maryland. . . .

4. That both John H. Droney and Mary Ann Droney are herewith denied alimony, past, present and future pursuant to their expressed waivers thereof as expressed in open court on June 12, 1990.

5. That both John H. Droney and Mary Ann Droney are herewith denied any marital award pursuant to their expressed waivers thereof as expressed in open court on June 12, 1990.

6. That judgment is granted in favor of John H. Droney against Mary Ann Droney in the amount of $1,000.00. Said payment shall be paid by Mary Ann Droney unto John H. Droney immediately.

(Emphasis added).

On November 15, 1991, Ms. Droney signed over to Mr. Droney a deed for the Property. Mr. Droney's subsequent attempt to transfer the Property to a third party led to his discovery that the home did not fully belong to him. When Mr. Droney sought to close out his outstanding loan and the vendee attempted to secure a mortgage on the Property, the lending banks determined that the "mobile" home remained designated as a vehicle and was still titled in the MVA records in the names of both Mr. and Ms. Droney; only the land itself had been transferred by Ms. Droney. The banks insisted that Mr. Droney separately transfer his interest in the home to the vendee, to be sure that title to the Property was clear. Mr. Droney then asked Ms. Droney to transfer title to the home to him, based on his understanding of their divorce agreement, but she refused. Because of Ms. Droney's refusal to transfer title to the home, as well as her failure to pay the $1,000, Mr. Droney filed a Petition for Contempt on February 26, 1992.

At the contempt hearing on November 18, 1992 (Judge John G. Turnbull, presiding), Ms. Droney argued that the Judgment only obligated her to transfer her interest in the "real estate," and that the mobile home was a motor vehicle, not "real estate." There, as here, she contended that the certificate of title for the home, as well as the recorded security interest, conclusively demonstrated that the home was a "vehicle," and could not be considered part of the "real estate" that she had agreed to transfer. She also alleged that she was not in contempt for failure to pay the judgment because she did not have the funds to do so. Notwithstanding Ms. Droney's

arguments, the court found Ms. Droney in contempt of court for failing to comply fully with the terms of the Judgment. It did not, however, impose a sentence.

On December 3, 1992, the court issued an Order (the "1992 Order"), in which the court found Ms. Droney in contempt of the Judgment as to both paragraphs 2 and 6. Nevertheless, the court declined to impose a sentence. The court said:

[The] sentence on the contempt is suspended generally provided that the Defendant, Mary Ann Droney, on or before December 18, 1992 does the following:

a. Properly execute an assignment of the ownership of her interest in a 1987 Champion Trailer ... located at 192 East Cumberland Road, Oakland, Garrett County, Maryland, *said trailer being specifically found by this Court to be "real estate" within the meaning of paragraph two of the aforementioned Judgment of Absolute Divorce dated January 22, 1991.*

[b.] Pay to the Plaintiff, John H. Droney, the $1,000.00 ordered in paragraph six of the aforementioned Judgment of Absolute Divorce dated January 22, 1991.

[c.] Pay to the Plaintiff, John H. Droney, the sum of $500.00 toward counsel fees incurred in this contempt proceeding....

[d.] Pay to the Plaintiff, John H. Droney, the $25.00 in open costs in this contempt proceeding.

(Emphasis added).

On December 7, 1992, Ms. Droney noted an appeal of the 1992 Order. However, this Court dismissed the appeal on the grounds that the 1992 Order was not final because it did not impose any penalty. Consequently, it was not appealable. *Droney v. Droney*, 97 Md.App. 755 (1993) (citing *Mitchell v. Mitchell*, 61 Md.App. 535, 544–48, 487 A.2d 680 (1985)). Accordingly, we declined to consider whether the home was, indeed, "real estate."

Meanwhile, on January 10, 1993, Mr. Droney filed a Petition for Further Contempt and Execution of Previously Suspended

Sentence. Also, on April 19, 1993, Mr. Droney filed a Request for Garnishment of Property Other Than Wages, asking for garnishment of the $1,525 owed to Mr. Droney under the 1992 Order. On June 18, 1993, the trial court issued the writ, which was subsequently satisfied.[1]

On March 9 and 10, 1994, Judge Turnbull heard Mr. Droney's Petition for Further Contempt. Again, Ms. Droney argued that she could not be in contempt as the Judgment did not order her to transfer anything other than "real estate," and a vehicle could not constitute real estate. Rejecting her argument, the court found as follows:

It's obvious from the [J]udgment of [A]bsolute [D]ivorce ... that it was the intent of the parties that Mrs. Droney get [the real estate located in] Baltimore County, Maryland, together with all the improvements thereon, which happens to be a house. It's also obvious from the other paragraph that Mr. Droney was to get the real estate located in Garrett County, Maryland, together with everything that there was on that particular property. I am absolutely convinced that neither the parties nor the attorneys at the time had any inkling whatsoever that there was some convoluted title floating around for what was once for the purpose of transporting a modular home or a movable home.

It is apparent ... that this house has been affixed to this property and is exactly that, it is a house that is affixed to this real estate and it has become part of the real estate and should be transferred as part of the real estate. Frankly, I don't think, if the circumstances were somewhat different, any court would have problems whatsoever with a bill to quiet title on the property and that would satisfy the title companies in this particular case. For [Ms. Droney] to come back at this point in time and say: "Oh, I forgot, this is part mine and it's personal property," is absolutely ludicrous.

---

1. Ms. Droney does not presently contest the debt of $1,525 or any part of the garnishment.

This time, after again finding Ms. Droney in contempt, the court sentenced Ms. Droney to two years of incarceration, suspending all but one year (the "1994 Order"). The court, however, allowed Ms. Droney to purge the contempt by executing the necessary documents to effectuate transfer of title of the home to Mr. Droney. Soon after being taken from the courtroom by the sheriff, Ms. Droney signed the documents, thereby purging the contempt. Ms. Droney now appeals from the 1994 Order.

### *Issues Presented*

Ms. Droney presents five questions for our consideration, which we have re-worded slightly:

1. Did the court err in granting the Petition for Contempt to enforce a disposition of property, where the Court of Appeals has held this could not be done?

2. Did the court err in determining that the trailer home was real property, when it is titled and its transfer is controlled by the Department of Transportation?

3. Did the court err in construing the Judgment of Absolute Divorce, according to its opinion as to the intent of the parties, where the language of the Judgment is plain and unambiguous?

4. Did the court err in ordering the transfer of ownership of personal property, when transfer is prohibited by Family Law Article, Section 8–202(a)(3)?

5. Did the court err in sentencing the appellant to one year for contempt, and denying her bail, when Md.Rule P5 specifically provides for bail pending appeal?

In addition, Mr. Droney asks whether Ms. Droney has timely appealed and whether the issues are now moot.

We hold that the issue of bail is moot. Although Ms. Droney's remaining issues are appealable and not moot, we conclude that they are without merit. Accordingly, for the reasons discussed below, we shall affirm.

### *Discussion*

#### I.

As Mr. Droney's questions of timeliness and mootness are threshold considerations, we shall address them first. Maryland Rule 8–202(a) requires parties to note any appeals within 30 days of the entry of judgment; the failure to note appeals in a timely manner can be grounds for dismissing an appeal under Rule 8–602(a)(3). Additionally, this Court may dismiss an appeal if the issues to be considered have become moot. Rule 8–602(a)(10); *see also, Potts v. Governor,* 255 Md. 445, 449, 258 A.2d 180 (1969); *Washington Homes v. Baggett,* 23 Md.App. 167, 171, 326 A.2d 206 (1974), *cert. denied,* 273 Md. 723 (1975).

■ Mr. Droney contends that Ms. Droney has only contested the finding of contempt as to the 1992 Order, but has not specifically challenged the 1994 Order. Additionally, he argues that if Ms. Droney wanted to appeal the "real estate" issue, she should have noted her appeal immediately following the entry of the Judgment. Yet at the time the Judgment was entered, the parties believed they were in agreement. The court had not yet been asked to interpret the Judgment, nor had the court issued an order based on the Judgment. Thus, no issue even existed until the 1992 Order had been entered. Moreover, we previously held that Ms. Droney *could not appeal* from the 1992 Order, as it was not final. Only after the court imposed a sentence for the contempt did the 30–day clock begin to run under Rule 8–202(a). Therefore, the contention as to timeliness is without merit.

■ Mr. Droney also insists that when Ms. Droney purged herself of the contempt she rendered all issues moot. "A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Att'y Gen. v. Anne Arundel Cty. Sch. Bus Contractors Ass'n,* 286 Md. 324, 327, 407 A.2d 749 (1979); *see also, News American Div. v. State,* 294 Md. 30, 38–39, 447 A.2d 1264 (1982). With contempt, however, even if the purge

cannot be undone, and thus the party held in contempt cannot be made "whole," the party remains entitled to seek exoneration. *Jones v. State,* 61 Md.App. 94, 96, 484 A.2d 1050 (1984) (defendant, who had served the entire contempt sentence, remained entitled to exoneration by having contempt finding set aside). *See also, Williams v. Williams,* 63 Md.App. 220, 225–26, 492 A.2d 649, *aff'd,* 305 Md. 1, 501 A.2d 432 (1985) (party wrongfully held in contempt has the right to have the records cleared of the contempt finding, even if in all likelihood no one else would ever know of it). Even if Ms. Droney cannot recover her interest in the home, she still may be entitled to a vacation of the contempt finding. Accordingly, the issues pertaining to the contempt itself, which further involve the question of whether Ms. Droney complied with the Judgment, are not moot.

■ In contrast, we do not agree with Ms. Droney that the issue of bail pending appeal is properly before us. Rule P5 gives an alleged contemnor the same right to bail while awaiting an appeal as an accused in a criminal proceeding, as established under Rule 4–349. Once Ms. Droney purged herself of the contempt—thus effectuating her release—the establishment of a bail thereafter would have been pointless. Consequently, "there is no longer any effective remedy which the court can provide," *Sch. Bus Contractors Ass'n,* 286 Md. at 327, 407 A.2d 749, and the bail issue is thus moot.

Even if the issue were not moot, we have repeatedly held, in the context of Rule 4–349, that the denial of bail pending appeal may be attacked only *collaterally,* by filing a petition for habeas corpus. *See, e.g., Hurley v. State,* 59 Md.App. 323, 327, 475 A.2d 518 (1984); *Long v. State,* 16 Md.App. 371, 372–73, 297 A.2d 299 (1972); *Lewis v. Warden,* 16 Md.App. 339, 341, 296 A.2d 428 (1972). *Accord, Jones v. State,* 61 Md.App. at 97–98, 484 A.2d 1050 (after court set no bail pending appeal of contempt finding, Jones did not file habeas corpus petition, and so served her entire contempt sentence). Accordingly, we decline to reach the merits of Ms. Droney's claim as to bail.

## II.

■ The contempt power is a tool available to a court to compel a person to act or not to act in a specified manner.

Today, contempts are classified as civil or criminal and at least in theory either of these may be direct or constructive.... Historically, criminal contempts were positive acts which offended the dignity or process of the court. Holding an offending party in contempt of court was designed to vindicate the authority and power of the court and punish disobedience to its orders....

Today, the line between civil and criminal contempt is frequently hazy and indistinct.... A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be merely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt—a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt.

*State v. Roll and Scholl,* 267 Md. 714, 727–28, 298 A.2d 867 (1973) (citations omitted). *See also,* Md.Rule 2–648 (contempt available to enforce judgment prohibiting or mandating action); Rules P1–P5 (contempt proceedings); 17 C.J.S. *Contempt* §§ 5(1), 6 (1963).

■ The decision of whether to hold a party in contempt is vested in the trial court. Md.Rule P1; *Bienenfeld v. Bennett–White,* 91 Md.App. 488, 514, 605 A.2d 172, *cert. denied,* 327 Md. 625, 612 A.2d 256 (1992). This Court will only reverse such a decision upon a showing that a finding of fact

upon which the contempt was imposed was clearly erroneous or that the court abused its discretion in finding particular behavior to be contemptuous. *Baltimore v. Baltimore,* 89 Md.App. 250, 253–54, 597 A.2d 1058 (1991). Ordinarily, in a review of contempt proceedings, this Court does not weigh the evidence; rather, we merely assess its sufficiency. *Murphy v. State,* 46 Md.App. 138, 152, 416 A.2d 748, *cert. denied,* 288 Md. 740 (1980).

Before a party may be held in contempt of a court order, the order must be sufficiently definite, certain, and specific in its terms so that the party may understand precisely what conduct the order requires. *Mattingly v. Houston,* 252 Md. 590, 593, 250 A.2d 633 (1969); *see also, Boucher v. Shomber,* 65 Md.App. 470, 477, 501 A.2d 97 (1985) (failure to pay an indefinite sum cannot be the basis for contempt). We observe that the Judgment was arguably unclear as to whether the mobile home was included in the term "real estate." Accordingly, the trial court may have abused its discretion in basing its 1992 finding of contempt on the language of the Judgment. Yet we need not decide whether the court abused its discretion in making that ruling. *See Mitchell v. Mitchell,* 61 Md.App. at 544–48, 487 A.2d 680. Significant to this case is the fact that in the 1992 Order the court resolved any uncertainty as to the meaning of the Judgment and unequivocally directed Ms. Droney to transfer title to the home. Her *subsequent* failure to comply with the court's directive is the subject of the 1994 Order. As we shall explain, the court did not abuse its discretion when, in the 1994 Order, it found Ms. Droney in contempt.

The parties do not dispute the fact that Ms. Droney failed to transfer title to the mobile home, as found in the 1992 Order and the 1994 Order. The underlying question is whether, based on the 1991 Judgment, the trial court erred in ordering Ms. Droney to transfer ownership of the home and then finding her in contempt for failing to do so. The answer to that question depends upon whether the mobile home was personalty or realty.

■ As previously noted, Ms. Droney argues that the Judgment did not order her to transfer the home, only the "real estate." She contends that the MVA records and security interest documents clearly establish that the home is a "vehicle," and not a part of the land. To this end, Ms. Droney cites several sections from Md.Trans. II Code Ann., Titles 11 and 13 (1992), including § 11–134 (defining "mobile home"), § 11–176 (defining "vehicle"), § 11–177 (defining "vehicle identification number"), § 13–101.1 (requiring certificate of title for each vehicle), § 13–102 (exceptions to titling requirement), and § 13–112 (requiring transfers of a vehicle to be accomplished by delivery of certificate of title).

We do not agree that these statutory sections conclusively establish that the disputed property is a motor vehicle. Initially, we observe that the definitions cited by appellant are expressly limited in their applicability to Md.Trans. II Code Ann., Titles 11–27. *Id.*, §§ 11–101, 11–201, 11–202, 11–206. Therefore, the statutory sections cited do not modify the common law of real property and fixtures. *Bradshaw v. Prince George's Cty.*, 284 Md. 294, 302, 396 A.2d 255 (1979) ("It is presumed that the legislative body did not intend to make any alteration of the common law other than what is plainly stated."). Also, Ms. Droney has not provided any legal authority for the proposition that an object is always a motor vehicle so long as MVA records say the object is a motor vehicle, even when the object otherwise has all the indicia of a home and is immobile.

■ We are of the view that the mobile home is, indeed, a fixture annexed to the land. *Black's Law Dictionary* (6th ed. 1991) defines "real estate" as "[l]and *and anything permanently affixed to the land, such as buildings,* fences, and those things attached to the buildings, such as light fixtures, plumbing, and heating fixtures, *or other such items which would be personal property if not attached.*" *Id.*, at 1263 (emphasis added). *Black's* defines a "fixture" as follows:

An article in the nature of personal property which has been so annexed to the realty that it is regarded as a part of the real property. . . .

A thing is deemed to be affixed to real property when it is attached to it by roots, imbedded in it, permanently resting upon it, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, *bolts*, or screws. *Id.*, at 638 (emphasis added).

The determination of whether an object has changed from personal property to a fixture of real property is a mixed question of law and fact. *Allentown Plaza Assocs. v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 345 n. 9, 405 A.2d 326 (1979). To resolve the question of whether an item is personalty or realty, there are several factors to consider: the nature of annexation (*i.e.*, actual or constructive); the degree to which the land has been adapted to accommodate the use of the object; the ease with which the object may be removed without damaging the real property; and the intent of the parties (which can be inferred from the nature of the object as well as the context of its use and annexation). *Dermer v. Faunce*, 191 Md. 495, 500, 62 A.2d 304, *on reh'g*, 191 Md. 501, 62 A.2d 582 (1948); *Schofer v. Hoffman*, 182 Md. 270, 274, 34 A.2d 350 (1943); *Allentown Plaza*, 43 Md.App. at 345 n. 9, 405 A.2d 326.

In the instant case, the trial court's analysis of the facts supported its finding that the home had become a fixture; the court was not clearly erroneous. With respect to attachment to the land, the facts showed that the wheels had been removed and the home had been attached to the ground with bolts and utility lines. The parties also had installed a 2,000–pound fireplace and had covered the exterior of the house with siding. Regarding the adaptation of the land to the use of the home, the record also showed that the Droneys built a deck entirely surrounding the house and planted shrubs around the house. Mr. Droney testified that any attempt to remove the home would "wreck" it. In short, the home was not moving anywhere.

With respect to the intent factor, no evidence was presented by the parties to show that they ever intended to sever the mobile home from the land. Although the Judgment does not

expressly mention the mobile home, it is relevant as to intent because it reflects the parties' agreement.

Maryland has long followed the rule that the interpretation of the terms of a consent judgment will be governed by ordinary contract principles, as consent judgments are a product of negotiation and agreement. *Ramsey, Inc. v. Davis,* 66 Md.App. 717, 727–28, 505 A.2d 899 (1986). In *Roged, Inc. v. Paglee,* 280 Md. 248, 254, 372 A.2d 1059 (1977), the Court explained the approach a trial court should take in interpreting a consent judgment:

> It is well settled that Maryland follows the objective test in the interpretation of contracts, and that the application of this test means that where the language is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed: not what the parties intended the contract to mean, but *what a reasonable person in the position of the parties would have thought it meant.*

*Id.,* at 254, 372 A.2d 1059 (citations omitted; emphasis added). *See also, Shanty Town Assocs. v. Dep't of the Environment,* 92 Md.App. 103, 112, 607 A.2d 66 (citing *Paglee* ), *cert. denied,* 328 Md. 94, 612 A.2d 1316 (1992).

Analyzing the Judgment in the context of the facts, a reasonable person, in the position of the parties when the Judgment was entered, would have thought that the agreement, as reflected by the Judgment, contemplated an exchange of interests in the two properties, including the homes on the properties. Ms. Droney received from Mr. Droney the Baltimore County land *and* the home situated on it, which had been the residence they shared prior to the divorce. The court reasonably inferred that the intent of the parties' agreement contemplated an exchange of residences.[2]

---

2. Indeed, a contrary interpretation would require the "reasonable person" to conclude that the parties intended the ownership status of the Property to remain in legal limbo.

Several other jurisdictions have considered the issue now before us. *See, e.g., Wade v. Wade,* 72 N.C.App. 372, 325 S.E.2d 260, 267 *cert. denied,* 313 N.C. 612, 330 S.E.2d 616 (1985) (both at common law and by statute, buildings, including mobile homes, placed upon real property become a part of the real property; and "the burden of proof is on the party claiming the house is personal property to show that it retained that character."). In those cases where the home in question was no longer readily transportable, the courts have held that the mobile home in question became a fixture of real property. *See, e.g., Solomon v. Gentry,* 388 So.2d 52, 53–54 (Fla.App.1980) (home on blocks, with wheels removed and utility lines attached); *C.I.T. Fin. Svces. v. Premier Corp.,* 747 P.2d 934, 937–38 (Okla.1987) (home on cement footing, attached with metal skirting, bolts, and steel straps, as well as utility lines). On the other hand, when the facts indicated that the home remained readily movable, other courts have found the mobile home to have been personal property. *Estate of Schulz v. Flora,* 180 Pa.Super. 237, 120 A.2d 178 (1956) (homeowner, who actually moved trailer through several states, cannot say trailer is so fixed to land as to be realty); *Cooper's Mobile Homes, Inc. v. Simmons,* 94 Wash.2d 321, 617 P.2d 415, 418 (1980) (homeowner, who tried to sell mobile home without land, cannot say home is so attached to land as to be realty).

The analysis in *C.I.T. Fin. Svces. v. Premier Corp.,* 747 P.2d 934 (Okla.1987), is particularly instructive. There, as here, the "double-wide" mobile home in question had been placed on footings made from poured cement, attached with metal skirting, bolts, and steel straps, the wheels had been removed, and utility lines hooked up. After reviewing the common law of fixtures, and noting that most states use similar common law rules, the Oklahoma Supreme Court reviewed several similar cases in other jurisdictions:

The Seventh [C]ircuit in considering a case similar to this one stated:

Physical attachment did occur by means of cinder blocks and a 'c' clamp while connections for electricity, sewage,

and natural gas were provided as well. *George v. Commercial Credit Corp.*, 440 F.2d 551, [554] (7th Cir.1971). The court, interpreting Wisconsin law, held that a mobile home affixed to real estate was a fixture. In *Fink v. Wemco Corp.*, 4 B.R. 741, 29 U.C.C.Rep. 1431 (Br.Ct.W.D.N.Y.1980), the court found the mobile home to be a fixture, applying the same ... test applicable in Oklahoma and the Seventh Circuit. Other states that have considered the question have applied the same rationale in determining a mobile home to be a fixture. *Commercial Tp. v. Block 136, Lot 2*, [179 N.J.Super. 307, 431 A.2d 862 (1981)2]; *Hartford National Bank & Trust Co. v. Godin*, [137 Vt. 39, 398 A.2d 286 (1979)]. In *Hartford* the court found specific evidence of how the mobile home became a fixture.

> Clear intent to make it part of the realty was evidenced by a concrete block foundation, attached steps, a connected septic system, and encasement of the foundation in aluminum foundation siding.... *Id.* [398 A.2d at 287].

On the other hand, in *In Re Gray*, 40 B.R. 429, 434 (W.D.Okl.1984) the Bankruptcy Court ... found a mobile home to be personalty because:

> [T]he debtors in the instant case do not own the land on which the mobile home rests.... Nor was there any demonstrable fixation to the realty. There was no additional construction which would hinder future mobility. There was no permanent foundation.... In fact, not even the wheels were removed.

747 P.2d at 936–37. The Oklahoma Supreme Court had no difficulty in concluding from these cases that the mobile home before it was a fixture.

Applying these cases here, we note that at each of the contempt hearings the court had before it evidence of the manner in which the home was attached to the land and the context of the exchange of properties. The evidence supported the court's findings that what once was a "mobile" home—an item of personalty—had become real property. We

see no error in these findings.[3] Accordingly, the court correctly directed Ms. Droney to transfer the home in its 1992 Order; the court's finding of contempt in the 1994 Order, based on Ms. Droney's failure to comply, was not an abuse of discretion.

### III.

■■■ Ms. Droney contends that even if the court did not err in finding that the term "real estate" encompassed the home, the court lacked the statutory authority to order her to transfer her interest in property, either as part of a divorce decree or in the enforcement thereof. Under Md.Fam.Law Code Ann., § 8–202(a) (1991), the court may determine ownership of disputed property when the court grants an absolute divorce, but the statute expressly denies the court the power to transfer property, other than money, as part of an award. *See also, Kline v. Kline,* 93 Md.App. 696, 703, 614 A.2d 984 (1992). At the same time, the court can merge the terms of a deed, agreement, or settlement made between the parties during the divorce as a part of the divorce decree. Md.Fam. Law Code Ann., § 8–105(a); *Goldberg v. Goldberg,* 290 Md. 204, 210 n. 6, 428 A.2d 469 (1981). Once the terms are so merged, the court has the power to enforce those terms using the contempt power. Md.Fam.Law Code Ann., § 8–105(a);

---

**3.** In addition, our decision finds logical support in the area of lawful warrantless searches of vehicles under the Fourth Amendment of the United States Constitution. In *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Supreme Court held that the mobile home in question was sufficiently mobile that it fell within the "automobile exception" to the prohibition on warrantless searches, even if it was being used primarily as a residence and not as a means of transportation. *Id.* at 393, 105 S.Ct. at 2070. The Court suggested, however, that the same home, on blocks and connected to utility lines in a mobile home park, would not have been subject to a warrantless search, because the critical element of mobility would be lacking. *Id.* at 394 n. 3, 105 S.Ct. at 2071 n. 3. *See also, Doering v. State,* 313 Md. 384, 398–99, 545 A.2d 1281 (1988) (interpreting *Carney,* defendant's bus, which had been converted into lodging, was subject to warrantless search as it had all of its tires fully inflated, had all its windows intact, had all its lights in apparently functional condition, and was near a road).

Md.Rule 2–648; *Mendelson v. Mendelson,* 75 Md.App. 486, 497–98, 541 A.2d 1331 (1988).

Ms. Droney relies on the case of *McAlear v. McAlear,* 298 Md. 320, 469 A.2d 1256 (1984) for the proposition that contempt may not be used to enforce a "property disposition award." In *McAlear,* the divorced wife sought to have her ex-husband held in contempt for his failure to pay the monetary award specified in the judgment of absolute divorce. The Court held that, unlike alimony, a monetary award in a divorce case constitutes a "debt," and as the Maryland Constitution, Art. III, § 38 forbids incarceration for the failure to pay a debt, contempt was not an available method of enforcement. *Id.* at 349–52, 469 A.2d 1256.

Ms. Droney's reliance on *McAlear* is inapposite. The Court did not consider Fam.Law, § 8–105(a), and we find nothing in *McAlear* that approaches the question of whether a court may use contempt to enforce the lawful terms of its own orders. Given the clear statutory authority to merge the terms of an agreement into a judgment of divorce and to enforce such terms with contempt, the court did not err in seeking to enforce the terms of the Judgment by ordering Ms. Droney to transfer her ownership of the Property to Mr. Droney.

AFFIRMED. COSTS TO BE PAID BY APPELLANT.