726 A.2d 887

**Curtis PIPER**

v.

**Teresa LAYMAN.**

**No. 797, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 6, 1999.

746

David E. Kartalia, Westminster, for appellant.

No brief or appearance by appellee counsel.

Argued before EYLER, ADKINS and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

ADKINS, Judge.

This case reaches this Court on appeal from a protective order issued by the Circuit Court for Carroll County pursuant to Md.Code (1984, 1991 Repl.Vol., 1998 Supp.), § 4–501 *et seq.* of the Family Law Article (FL) (Domestic Violence Act). The protective order was issued at the request of appellee, Teresa Layman, upon a complaint of stalking. A hearing was held and the court ordered that appellant, Curtis Piper, shall not: 1) abuse or threaten to abuse appellee, 2) contact or harass appellee, or 3) enter the residence of appellee.

Appellant asks us to determine whether the issue is moot, and if not, whether the trial court was clearly in error in finding that there was clear and convincing evidence of abuse. Appellee filed no brief.

For the following reasons, we vacate the order of the trial court granting appellee a domestic protective order.

## Facts and Legal Proceedings

On March 23, 1998, appellee filed a petition in the circuit court for protection from domestic violence against Curtis Piper, her ex-fiancé and the father of her child. Appellant has

custody of the parties' child, and appellee has weekend visitation with the child. Appellee alleged that on or about March 10, 1998, and on other occasions, appellant stalked and harassed appellee, and mentally abused the parties' minor child.

In response to appellee's petition, the court issued a temporary ex parte order for protection from abuse and threats. The court found that the acts that placed appellee in fear of imminent serious bodily harm were "stalking, harassment at work, threats etc." The ex parte order directed that appellant: 1) not abuse or threaten to abuse appellee; 2) not contact or harass appellee in any manner, in person, by telephone, or in writing, except for visitation purposes; 3) not enter into appellee's home; and 4) stay away from appellee's place of employment.

The court held the requisite second hearing on March 30, 1998. At the end of that hearing, the court found that appellant placed appellee in fear of imminent bodily harm by stalking her. It issued a protective order, effective until July 1, 1998, ordering appellant not to contact or harass appellee and to stay away from appellee's place of employment and residence. There is no evidence that appellant violated or was alleged to have violated the protective order.

## I.

### Mootness of the Appeal

■ Anticipating our concern that the validity of an expired protective order may be a moot issue, appellant argues that the existence of the court's finding and order leaves a residual stigma on his record, which merits removal. This finding and order, he argues, may cause him to "run the risk of being punished as a sort of repeat offender if he has the misfortune to lose another case of the same type." He also draws an analogy to a contempt proceeding, and relies upon the law that although a "party held in contempt cannot be made 'whole,' the party remains entitled to seek exoneration." *Droney v. Droney*, 102 Md.App. 672, 682, 651 A.2d 415 (1995).

■ The protective order at issue expired on July 1, 1998. Generally, a case is moot if at the time it is before the court there is no longer an existing controversy between the parties and the court cannot provide an effective remedy. *See Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395 (1989). In *Coburn v. Coburn*, 342 Md. 244, 674 A.2d 951 (1996), involving an appeal from the issuance of a domestic violence protective order, the Court of Appeals stated:

> Preliminarily, we note that the instant case is moot because the final protective order at issue [has] expired.... A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy. Generally, a moot case is dismissed without our deciding the merits of the controversy. This Court in rare instances, however, may address the merits of a moot case if we are convinced that the case presents unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct.

*Id.* at 250, 674 A.2d 951 (citations omitted). The Court decided to "exercise [its] discretion to decide the issue raised in the ... case because it is likely to recur frequently but will escape judicial review ... due to the limited duration of protective orders." *Id.*

Appellant asks us to decide the present case on its merits (even though the protective order has expired) for a different reason, one not addressed by the Court of Appeals in *Coburn*. He asks us to decide his case because the court's findings and order place a stigma upon his record, and argues that, like the litigant in *Droney* who was held in contempt of court, he is entitled to seek exoneration from this stigma at the appellate level.

In *Droney*, a divorce action, the wife was found by the trial court to be in contempt by refusing to convey to her husband her interest in a mobile home owned by the parties. After a contempt hearing, the court sentenced Ms. Droney to two years of incarceration, suspending all but one year. The court

also directed that Ms. Droney could purge the contempt by executing the necessary documents to effectuate transfer of the mobile home to Mr. Droney. After the hearing, Ms. Droney signed the transfer documents, thereby purging the contempt. On Ms. Droney's appeal from the finding of contempt, Mr. Droney argued that when "she purged herself of the contempt she rendered all issues moot." *Droney,* 102 Md.App. at 681, 651 A.2d 415. We rejected this contention, and held that

> [w]ith contempt ... even if the purge cannot be undone, and thus the party held in contempt cannot be made 'whole,' the party remains entitled to seek exoneration.... Even if Ms. Droney cannot recover her interest in the home, she still may be entitled to a vacation of the contempt finding. Accordingly, the issues pertaining to the contempt itself ... are not moot.

*Id.* at 681–82, 651 A.2d 415 (citations omitted). We relied in *Droney* upon our earlier decisions in *Jones v. State,* 61 Md. App. 94, 484 A.2d 1050 (1984), and *Williams v. Williams,* 63 Md.App. 220, 492 A.2d 649, *aff'd,* 305 Md. 1, 501 A.2d 432 (1985). A review of these cases is helpful.

*Jones* involved an appeal from a circuit court's summary finding of criminal contempt on the part of Ms. Jones after she failed to appear as a defendant in a criminal trial. When she failed to present herself in court on the date and time of trial, a bench warrant was issued. Later the same day, Ms. Jones appeared in the courtroom and told the judge that she went to the wrong courthouse. The trial court rejected this defense and said, "I find [Ms. Jones] guilty of contempt for failure to appear. She's had notice. In addition, her failure to appear obstructed the proceedings in this case. We had to discharge the witnesses in this case." The judge sentenced Ms. Jones to an eighty-nine day jail term, which she had completed at the time of her appeal.

On appeal, we held that even though Ms. Jones already served her full sentence, "the matter is not moot, because Ms. Jones is entitled to seek exoneration through having the

contempt finding set aside." *Jones,* 61 Md.App. at 96, 484 A.2d 1050. On the merits of the case, we applied the rule that one can be punished summarily for contempt only if the contemptuous act was direct criminal contempt. *See id.* at 98, 484 A.2d 1050. We concluded that, under the particular circumstances of that case, her failure to appear did not constitute direct contempt of the court because it was not "an open insult to the court, the judge or a resistance to the powers of the judge." *Id.* at 99, 484 A.2d 1050.

In *Williams,* we were presented with an appeal from a finding of civil contempt based upon Mr. Williams's failure to make alimony payments required by a separation and property settlement agreement that had been ratified, approved, and adopted by the court, but not incorporated into the parties' divorce decree. Prior to the appeal from the actual judgment of contempt, there had been an earlier appeal from the trial court's determination that Mr. Williams was subject to contempt if he was found to have violated the separation agreement. On that earlier appeal, in an unreported decision, we held that "an agreement that was neither incorporated nor merged into a divorce decree, could [not] form the basis for a contempt action," and remanded the case to the trial court. *Williams,* 63 Md.App. at 224, 492 A.2d 649. Mr. Williams, however, was held in contempt while the first appeal was pending.

Upon Mr. Williams's appeal from the adjudication of his contempt, Ms. Williams argued that our ruling in the first case rendered his appeal moot because any decision therein would not affect what already occurred, and therefore no controversy existed. *See id.* We rejected her contention. Although we agreed that the holding in the first appeal governed the outcome of the contempt issue, we further found that

there is an effective remedy that this [C]ourt can provide.... In one of the orders, ... there is an explicit finding of 'willful and deliberate' conduct. Were we to dismiss this appeal, those orders would remain spread out among the records of the Circuit Court ... for all to see. While they may not ever be utilized and while their effect

beyond mere existence is not known, and may be none, that existence, uncontradicted, gives substance to this appeal. *Id.* at 226, 492 A.2d 649.

In the instant case, the circuit court found appellant to have committed acts against appellee which placed her "in fear of imminent serious bodily harm." The court's finding led to the issuance of a protective order pursuant to the Domestic Violence Act. This order is a permanent record of the circuit court. It could have significant repercussions for Mr. Piper in several ways.

One potential consequence of the existing finding will occur in the event Ms. Layman ever files another petition for relief against domestic violence. She will be asked, on the form petition, to list all court cases involving her and appellant, or the minor child and appellant. *See* FL § 4–504(b). Thus, if another petition is filed, a judge would review the record of this case and assume that appellant had previously placed appellee "in fear of imminent serious bodily harm." As was explained by the Court of Appeals in *Coburn*, this information would appropriately be considered by the court:

> One act of abuse may not warrant the same remedy as if there is a pattern of abuse between the parties. Different remedies are required when there has been an isolated act of abuse that is unlikely to recur, as compared to an egregious act of abuse preceded by a pattern of abuse. The more abuse that occurred in the past, the higher the likelihood that future acts of abuse will occur and thus, the need for greater protective measures. Thus, the statute appropriately gives discretion to the trial judge to choose from a wide variety of available remedies in order to determine what is appropriate and necessary according to the particular facts of that case. Evidence of prior incidents of abuse is therefore highly relevant both in assessing whether or not to issue a protective order and in determining what type of remedies are appropriate under the circumstances.

*Coburn*, 342 Md. at 258, 674 A.2d 951 (citations omitted); *see also Streater v. State*, 352 Md. 800, 724 A.2d 111 (1999)

(holding that a prior protective order was admissible in a stalking and harassment trial subject to evaluation under Maryland Rule 5–404(b)).

There may well be consequences for appellant outside the confines of the Domestic Violence Act. Heightened public awareness and sensitivity to the existence of domestic violence, as well as legitimate public contempt for abusers, creates the potential for prejudice against a person who has unfairly or inaccurately been labeled an abuser. We think it is reasonable to say that in today's society, a person who has committed abuse subject to protection under the Domestic Violence Act is considered more reprehensible than a person who has been found to be in willful contempt of court. Thus, under the reasoning in *Williams* and *Droney*, such person has an interest in exoneration even if the period of the protective order has expired without incident.

In *Williams*, we were concerned about a finding of "willful and deliberate" contempt being "spread out among the records of the Circuit Court for Montgomery County for all to see." *Williams*, 63 Md.App. at 226, 492 A.2d 649. With the advances in technology and the communications industry in the fourteen years since our decision in *Williams*, it goes without saying that our concern about dissemination of inaccurate and disparaging information is enhanced. Further, a person applying for a job, a professional license, a government position, admission to an academic institution, or the like, may be asked about whether he or she has been the subject of an order pursuant to the Domestic Violence Act. In light of the stigma that is likely to attach to a person judicially determined to have committed abuse subject to protection under the Domestic Violence Act, we think that the expiration of the protective order does not automatically render the matter moot. The review of such finding on appeal, and the potential for vacation of the order, thereby removing the stigma, gives "substance to [the] appeal." *Id.* Thus, we do not consider Mr. Piper's appeal to be moot.

## II.

### The Merits

We now address the merits of the appeal. Appellant argues that there was no evidence to support a finding of abuse by the trial court sufficient to warrant a domestic violence protective order. Thus, the issuance of the order, appellant asserts, was clearly erroneous. We agree.

The court is authorized to grant a final protective order after a contested hearing if the court finds by clear and convincing evidence that abuse occurred. *See* FL § 4–506(c)(1)(ii). Abuse is defined as:

(i) an act that causes serious bodily harm;

(ii) an act that places a person eligible for relief in fear of imminent serious bodily harm;

(iii) assault in any degree;

(iv) rape or sexual offense as defined by Article 27, §§ 462 through 464C of the Code or attempted rape or sexual offense in any degree; or

(v) false imprisonment.

FL § 4–501(b).

The burden is on the petitioner to show by clear and convincing evidence that the alleged abuse has occurred. *See Ricker v. Ricker,* 114 Md.App. 583, 586, 691 A.2d 283 (1997); FL § 4–506(c)(1)(ii). "If the court finds that the petitioner has met the burden, it may issue a protective order tailored to fit particular needs that the petitioner has demonstrated are necessary to provide relief from abuse." *Ricker,* 114 Md.App. at 586, 691 A.2d 283. When conflicting evidence is presented, we accept the facts as found by the hearing court unless it is shown that its findings are clearly erroneous. *See* Md. Rule 8–131(c); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). As to the ultimate conclusion, however, we must make our own independent appraisal by reviewing the law and applying it to the facts of the case. *See Aiken v. State,* 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied,* 337 Md.

89, 651 A.2d 854 (1995). We base our decision on the evidence at the second hearing, in which Mr. Piper participated.

■ At the second hearing, Ms. Layman represented herself and was examined initially by the court. Appellee testified about a phone call she received at her place of employment that was apparently disconnected prior to any communication, making it impossible for her to inquire as to the caller's identity. She then reiterated her allegation offered at the ex parte hearing that Mr. Piper had been following her on a particular occasion. She testified that when she got off work and was driving home, she "noticed that there was a car behind [her] ... and as [she] would speed up, this car would speed up, and as [she] would slow down, then they would back out." Ms. Layman did some maneuvering and was able to identify Mr. Piper and his wife as the occupants of the vehicle that was following her. "So, [she] got up behind him. [She] turned on [her] high beams and ... took his tag number."

The court asked her to elaborate on the alleged "continual harassment at work." She responded that there was "one other incident where he had called me." Ms. Layman then relayed an alleged incident when Mr. Piper "pulled into the driveway [of her residence and] sat there for a couple of minutes." She could not, however, make a reliable identification. She then testified:

> And then the continual phone calls. . . . [W]hen I ... have my daughter in my custody [for visitation] ... and it's every night I have her, there's—it's a phone call, and if he can't reach her right then and there, he'll call back and he'll call back and he will call back. I don't have no problem, you know, but if I'm away with my daughter, then he should respect that. . . .

On cross-examination, Mr. Piper's attorney questioned her as to her past documented drug and alcohol habits, including several convictions for driving while intoxicated. He also directed her attention to the applicable custody order prohibit-

ing her use of alcohol or drugs during her visitation periods with the child. She responded by testifying:

I have no problems if he gets a State Police officer if he feels my daughter is in danger. He doesn't have to be sitting and hovering. If he thought she was in danger, he could have walked up to the door and knocked on the door then, not just sit in my driveway.

At the close of cross-examination, the following occurred:

[MR. PIPER'S ATTORNEY]: There were no threats of harm, none have even been testified to, and Your Honor, my point is that he may be a clumsy gumshoe, but he's not an abuser, ... and this neither adds up to ...

THE COURT: Well, I, been—I've been stalked and I think I was abused.... If I have anybody strange following me constantly around from one place to another, that is—that's ... abuse, as far as I'm concerned, whether I know them or not.

[MR. PIPER'S ATTORNEY]: Your Honor, I don't think—I don't think it's abuse in the context of this case.... [I]n this particular case, what she's really worried about Piper is that he's going to get evidence as he has before. She doesn't like him poking around in her life.

THE COURT: I—I would agree with her.

Appellee then produced a witness who testified that Mr. Piper is "always badgering" Ms. Layman. The witness, appellee's roommate, also testified that she saw appellant or appellant's family in the driveway of the house where Ms. Layman lived "[a]bout four times."

Appellant then testified. With respect to the incident that caused Ms. Layman to note his vehicle tag number, he testified that he did not intend to follow Ms. Layman and that, upon determining that Ms. Layman was following him, he did not want to stop because he wanted to avoid engaging Ms. Layman in any type of confrontation. Mr. Piper further testified that he drove past appellee's home on "two occasions," but he did not stop in front of the home nor pull into the driveway on either occasion. He testified that he would

no longer follow her or check up on her and would "leave that up to a private investigator."

The court made a ruling from the bench prior to issuing the protective order, stating: "I think Mr. Piper could be on notice, at this point, even if this is not in the stalking statute,[1] the harassment statute says 'anyone who seriously annoys anyone else by following them around is guilty of the crime of harassment.'" [2] The court then granted appellee the protective order to be "effective until July the 1st of 1998."

■ The Domestic Violence Act is clear that a finding of abuse requires at least one of the following acts: an act that causes serious bodily harm; an act that places a person in fear of imminent serious bodily harm; assault; rape; a sexual offense; or false imprisonment. *See* FL § 4–501. After a careful review of the record, we find no testimony given by appellee or her witness that allows an inference that appellant committed any of the conduct constituting "abuse." At the ex parte hearing appellee herself acknowledged that Mr. Piper did not have any physical contact with her. Appellee was only able to recount one instance of Mr. Piper's "following" her while both were driving their respective vehicles, and in that

---

**1.** We assume that the trial court was referring to "stalking" as it is defined in Md.Code (1957, 1996 Repl.Vol., 1998 Supp.), Art. 27 § 124, although this stalking statute is not incorporated into the Domestic Violence Act. In § 124(a)(3), stalking is defined as:

[A] malicious course of conduct that includes approaching or pursuing another person with intent to place that person in reasonable fear:

(i) Of serious bodily injury or death; or

(ii) That a third person likely will suffer serious bodily injury or death.

**2.** Md.Code (1957, 1996 Repl.Vol., 1998 Supp.), Art. 27 § 123(c) addressing harassment, provides:

A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys another person:

(1) With intent to harass, alarm, or annoy the other person;

(2) After reasonable warning or request to desist by or on behalf of the other person; and

(3) Without a legal purpose.

instance, she did not indicate that he threatened her in any manner or that she feared that he would harm her. Rather, she maneuvered her vehicle from a position in front of him to a position behind him, so that she could identify his license plate number, presumably for purposes of identification.

Testimony by appellee's roommate that she saw appellant or appellant's family in the driveway of Ms. Layman's house during the times that the parties' minor child was visiting appellee is not sufficient to show abuse. The parties are parents of a child who is in the custody of appellant, and with whom appellee has visitation. In his efforts to investigate and monitor appellee's activities during her visitation with the child, appellant may have over-stepped his role as custodial parent and inappropriately interfered with appellee's visitation rights. Such conduct might properly be the subject of a request for injunctive or other relief by the court that issued the custody and visitation order. The described conduct, however, does not constitute abuse within the meaning of the Domestic Violence Act.

Appellee's roommate also testified about frequent calls appellant made to appellee's residence during the weekends the child was visiting with appellee. If appellant were repeatedly calling appellee at work or at home to harass her, such calls might constitute conduct prohibited by Maryland law. *See* Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 555A. Under the clear terms of the Domestic Violence Act, however, such actions do not constitute "abuse."

We find that appellee did not meet the burden to show, by clear and convincing evidence, that appellant committed abuse that warranted the protective order. Accordingly, we vacate the finding of abuse and the protective order.

**JUDGMENT VACATED. COSTS TO BE PAID BY APPELLEE.**