GEER, Judge.
Defendant Kenneth Eric Reichard appeals from a domestic violence protective order ("DVPO") entered 8 January 2014. On appeal, defendant argues that the trial court erred by ordering, in both an ex parte DVPO and the final DVPO, that he surrender his firearms without entering findings in accordance with N.C. Gen.Stat. § 50B-3.1(a) (2013). We agree and reverse that portion of the trial court's orders.
Facts
On 11 October 2013, plaintiff Tiffany Brooke Griffin filed a complaint and motion for a DVPO against defendant. Plaintiff's verified complaint alleged:
On Tuesday 10/8/2013 he gave me a drug that I did not know what it was. When I was passed out he tried to take my clothes off, pull up my bra, he pulled my pants and underwear off. He rubbed his body against mine unit [sic] he ejaculated on to [sic] my leg. He told me if I call the police he would get in trouble. I'm afraid he will hurt or kill me to make sure I don't call the police.
The complaint additionally alleged that defendant had numerous guns, and that "[i]n his prior work in the military and police he has used deadly force before, and has nightmares of killing people. And I feel he would have no problem doing it." It alleged that defendant had made threats to commit suicide in that "[h]e has emotional stability [sic] and in the past has talked about it. He sees a doctor about P.T.S.D. and problems."
The trial court entered an ex parte DVPO the same day that plaintiff filed her complaint. The order found that defendant had committed a sexual battery against plaintiff on 8 October 2013. Specifically, it found that defendant "gave [plaintiff] drugs that incapacitated her and then took [her] clothes off and ejaculated on her [by] rubbing on his body on her. [D]efendant is suffering from P .T.S.D." Based upon this finding, the court concluded that defendant committed acts of domestic violence against plaintiff, that there is a danger of acts of domestic violence against plaintiff, and that defendant's conduct required that he surrender all firearms, ammunition, and gun permits.
On 1 November 2013, defendant filed a motion to produce medical records pertaining to plaintiff's visit to the emergency room on 8 October 2013 after the alleged sexual battery. On 7 November 2013, defendant filed an answer and a motion to strike the ex parte order as it related to the possession of firearms on the grounds that the order failed to make findings on any of the factors set forth in N.C. Gen.Stat. § 50B-3.1.
On 15 November 2013, the trial court entered orders granting defendant's motion for the production of medical records, denying defendant's motion to strike the firearms provisions of the ex parte order, and continuing the hearing on the request for a DVPO to allow for the production of medical records. However, on 3 January 2014, defendant chose to proceed with the hearing even though New Hanover County Regional Medical Center had not provided defendant with the medical records specified in the 15 November 2013 order.
At the hearing, plaintiff's evidence showed the following facts. Defendant and plaintiff met in 2007 and began a romantic relationship that had faded into a friendship by 8 October 2013. On 8 October 2013, plaintiff went over to defendant's house unannounced at around 9:00 a.m. after her class at Cape Fear Community College and asked defendant if she could use his computer. She was doing homework in defendant's office when he asked her if she wanted to smoke marijuana. At first, plaintiff said "no," but then she "gave in" after defendant asked her a few times. After she smoked the marijuana, she lost track of time. Defendant tried to kiss her, and she said "no" and pushed him away. They went into the living room to watch television. Then, "everything hit [plaintiff] at once," and she put her head on the back of the couch.
Defendant came over behind plaintiff and began rubbing his hands up and down her back under her shirt and rubbing her legs and bottom over her jeans. Plaintiff wanted it to stop, but she couldn't do anything because she felt heavy and disoriented. She eventually lifted up her head and told defendant she had to lie down, and they went from the couch to the bedroom. Plaintiff laid down on the bed and closed her eyes. Plaintiff's body began a ticking motion and she felt as if she did not have control over anything. Defendant took off plaintiff's pants and then lifted up her shirt and bra. Plaintiff lay there with her eyes closed and could not move but was able to cross her left leg over her right leg. Defendant rubbed himself against plaintiff until she felt something wet on her leg where defendant's penis had been. She asked defendant if he had ejaculated on her leg and he said no. Defendant then got up and got dressed.
Plaintiff got dressed and asked defendant to drive her home. As they were driving, plaintiff began having a panic attack, and she asked defendant to take her to the hospital. When they arrived at the hospital, defendant told her that if she said anything about the marijuana, she would be questioned about where the drugs came from and who gave them to her. Because she did not want to get defendant in trouble, plaintiff had second thoughts about going to the hospital and asked defendant to call her sister. Defendant dialed plaintiff's sister and gave her the phone. At her sister's insistence, plaintiff decided to go to the emergency room. Defendant accompanied her, but when plaintiff's sister arrived, he was ordered to leave.
Plaintiff was diagnosed with an "adverse drug reaction." The emergency room report from her visit indicates that plaintiff had been prescribed several medications. Plaintiff was unable to identify all of the medications and testified that she only took two of the medications daily: Welbutrin and Citalopram. She took Welbutrin to "slow [her] down" because she "can't shut [her] mind down," and she took the Citalopram as an antidepressant.
With respect to defendant's weapons, plaintiff testified that defendant "talked about guns all the time" but that plaintiff "didn't like guns and [she] didn't like them around [her] kids." She and defendant got into a fight one time about defendant keeping a gun in his truck because plaintiff did not want her kids to find it and hurt themselves. Plaintiff had seen "boxes and boxes of ammo" in defendant's closet and had seen a pistol in defendant's night stand. Plaintiff also testified that she and defendant had conversations about dreams and that defendant was having a hard time with graphic nightmares about killing people and would discuss them with her. On cross-examination, however, plaintiff acknowledged that defendant had never threatened to hurt her and had never threatened her or used a deadly weapon against her.
Defendant testified at the hearing as follows. Defendant and plaintiff had been dating on and off for many years. On or about 1 October 2013, they started spending time with each other again, but they had not been sexually active together since July 2013. When plaintiff came to defendant's house on 8 October 2013, defendant asked plaintiff only once if she wanted to smoke marijuana, and she did not hesitate to smoke marijuana with him. She had smoked marijuana at his house on a prior occasion. When they were on the couch, plaintiff told defendant that the room was spinning and that she was twitching, but he could not see her twitching. Defendant began rubbing her back and then it escalated to more sexual touching. Plaintiff did not indicate to defendant that she was distressed and responded to him "[l]ike she normally would." As soon as defendant became aware that something was wrong, all sexual activity ceased. Defendant did not ejaculate that morning. Defendant then complied with plaintiff's request to take her to the hospital and tried to keep her calm while she was having a panic attack.
Plaintiff called defendant later that evening after she returned from the hospital and accused him of lacing the marijuana with PCP. Defendant explained to her that PCP does not look or smell like marijuana and as far as he knew, they smoked straight marijuana because he would not have smoked anything that was laced. The conversation ended with defendant saying that if plaintiff wanted to end the relationship, he would respect her wishes and would not contact her. He did not speak with plaintiff again after that conversation.
Later that night, defendant drove to his parent's house in Maryland because his mother had fallen and injured her back. He took his guns with him because he and his father were planning on going shooting. He was in Maryland at the time the ex parte order was entered.
On 8 January 2014, the trial court entered a DVPO finding that on 8 October 2013, "Defendant committed sexual battery against Plaintiff while she was in an incapacitated state which was not consented to by Plaintiff by touching Plaintiff about her breasts, legs and groin area in an attempt to have sex." Additionally, the trial court found that "defendant is in possession of, owns or has access to firearms, ammunition, and gun permits." The order concluded that defendant had committed acts of domestic violence against plaintiff and ordered defendant not to assault, threaten, abuse, follow, harass, or interfere with plaintiff or plaintiff's minor children and not to threaten a member of plaintiff's family or household. The DVPO further prohibited defendant from possessing, receiving, or purchasing a firearm, suspended defendant's concealed handgun permit, and ordered defendant to surrender his firearms to the sheriff. Defendant timely appealed the DVPO to this Court.
Ex parte DVPO
On appeal, defendant challenges the firearms provisions contained in both the ex parte DVPO and the final DVPO. Initially, we must address plaintiff's argument that the ex parte DVPO is not reviewable because (1) defendant did not list the order in his notice of appeal, and (2) because the ex parte order has expired, the issues raised in his appeal of that order are moot.
Our appellate rules provide that the written notice of appeal "shall designate the judgment or order from which appeal is taken[.]" N.C.R.App. P. 3(d). "An appellant's failure to designate a particular judgment or order in the notice of appeal generally divests this Court of jurisdiction to consider that order." Yorke v. Novant Health, Inc.,192 N.C.App. 340, 347, 666 S.E.2d 127, 133 (2008). However, this Court has held that "where the intent to appeal an intermediate interlocutory order 'is quite clear from the record,' such order may be reviewed upon appeal of a final judgment notwithstanding failure of said order to be 'specifically mentioned in the notice of appeal [.]' " Wells v. Wells,132 N.C.App. 401, 405-06, 512 S.E.2d 468, 471 (1999) (internal citation omitted) (quoting Floyd & Sons, Inc. v. Cape Fear Farm Credit, ACA,350 N.C. 47, 52, 510 S.E.2d 156, 159, disavowed on other grounds by Dep't of Transp. v. Rowe,351 N.C. 172, 176, 527 S.E.2d 707, 710 (1999) ).
In this case, we believe that defendant's intent to appeal the ex parte DVPO is clear from the record. Defendant immediately noted his objection to the order by filing a "MOTION TO STRIKE EX PARTE ORDER AS IT RELATES TO POSSESSION OF FIREARMS" on 7 November 2013, the same day that he filed his answer to the complaint. Defendant listed both the denial of the motion to strike and the firearms provisions in the ex parte order in his proposed issues on appeal of the final DVPO. Furthermore, defendant's arguments regarding the ex parte DVPO are substantially the same as his arguments with respect to the DVPO that was properly appealed. We conclude that defendant's intent to appeal the ex parte order is clear from this record and is therefore reviewable on appeal despite defendant's failure to specifically designate the order in his notice of appeal. See id.at 406, 512 S.E.2d at 471 (holding interlocutory order referenced in assignments of error reviewable even though not referenced in notice of appeal from final order).
The fact that the ex parte DVPO has expired does not render the appeal of the order moot. In Smith v. Smith,145 N.C.App. 434, 437, 549 S.E.2d 912, 914 (2001) (quoting Piper v. Layman,125 Md.App. 745, 753, 726 A.2d 887, 891 (1999) ), this Court explained that an expired DVPO is reviewable because of the collateral legal and non-legal consequences of such an order, including the " 'stigma that is likely to attach to a person judicially determined to have committed [domestic] abuse.' " This Court has applied the reasoning of Smithto hold that an appeal of an expired ex parte DVPO is not moot. See Rudder v. Rudder,--- N.C.App. ----, ----, 759 S.E.2d 321, 325 (2014) (holding appeal of ex parte DVPO not moot).
We also acknowledge that the final DVPO entered in this case was set to expire on 3 January 2015. In addition to the collateral legal consequences of that order set forth in Smith,we note that N.C. Gen.Stat. § 50B-3.1(f) provides that a defendant who has surrendered firearms must file a motion requesting the return of the surrendered firearms at the expiration of the DVPO. After the filing of the motion, the trial court must schedule a hearing and determine whether the defendant "is subject to any State or federal law or court order that precludes the defendant from owning or possessing a firearm." Id.There is no indication in the record that defendant has recovered his firearms. The fact that, as far as we know, the sheriff continues to maintain possession of defendant's firearms provides an additional ground why the issues raised in this appeal are not moot. Accordingly, we review both orders.
Discussion
" 'When the trial court sits without a jury [regarding a DVPO], the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal.' " Hensey v. Hennessy,201 N.C.App. 56, 59, 685 S.E.2d 541, 544 (2009) (quoting Burress v. Burress,195 N.C.App. 447, 449-50, 672 S.E.2d 732, 734 (2009) ).
On appeal, defendant urges this court to reverse the portions of the ex parte DVPO and the final DVPO ordering him to surrender his firearms and prohibiting him from possessing, receiving, or purchasing a firearm because the trial court failed to find any of the factors enumerated in N.C. Gen.Stat. § 50B-3.1(a). N.C. Gen.Stat. § 50B-3.1 provides:
(a) Required Surrender of Firearms.-Upon issuance of an emergency or ex parte order pursuant to this Chapter, the court shall order the defendant to surrender to the sheriff all firearms, machine guns, ammunition, permits to purchase firearms, and permits to carry concealed firearms that are in the care, custody, possession, ownership, or control of the defendant if the court finds any of the following factors:
(1) The use or threatened use of a deadly weapon by the defendant or a pattern of prior conduct involving the use or threatened use of violence with a firearm against persons.
(2) Threats to seriously injure or kill the aggrieved party or minor child by the defendant.
(3) Threats to commit suicide by the defendant.
(4) Serious injuries inflicted upon the aggrieved party or minor child by the defendant.
This Court has held that "to order a defendant to surrender his firearms, the court mustfind one of the statutory factors justifying that action." State v. Poole,--- N.C.App. ----, ----, 745 S.E.2d 26, 37 (emphasis added), disc. review denied,367 N.C. 255, 749 S.E.2d 885 (2013). It is undisputed that the trial court did not make any of the above findings in either the ex parte DVPO or the final DVPO. The ex parte order concluded that "defendant's conduct requires that he/she surrender all firearms, ammunition and gun permits. [G.S. 50B-3.1 ]." We hold that this conclusion was not supported by the necessary findings, and vacate the portion of the ex parte DVPO ordering the surrender of firearms.
The final DVPO, on the other hand, did not conclude that the surrender of firearms was required by N.C. Gen.Stat. § 50B-3.1, but ordered defendant to surrender his firearms anyway. Plaintiff argues that this decree was a proper use of the trial court's discretion to grant relief pursuant to N.C. Gen.Stat. § 50B-3(a) (2013). We disagree.
N.C. Gen.Stat. § 50B-3(a) sets forth the various types of relief that the trial court may grant in a protective order, but does not include specific provisions for the surrender of firearms, such as set forth in N.C. Gen.Stat. § 50B-3.1(a). Plaintiff argues that although the trial court did not make sufficient findings to require the surrender of firearms pursuant to N.C. Gen.Stat. § 50B-3.1(a), the trial court was nevertheless able to grant that relief pursuant to N.C. Gen.Stat. § 50B-3(a)(13), which allows the court to "[i]nclude any additional prohibitions or requirements the court deems necessary to protect any party or any minor child." Plaintiff additionally points to N.C. Gen.Stat. § 50B-3.1(l), which states that "[n]othing in this section is intended to limit the discretion of the court in granting additional relief as provided in other sections of this Chapter."
Even assuming, without deciding, that the trial court had the authority to grant such relief pursuant to N.C. Gen.Stat. § 50B-3(a)(13), the trial court failed to make any findings to show that the surrender of firearms was "necessary to protect" plaintiff or her children under the circumstances of this case. Aside from failing to make any of the findings listed in N.C. Gen.Stat. § 50B-3.1 -all of which would support the conclusion that the surrender of firearms is "necessary to protect" plaintiff-the trial court did not provide any other explanation for the firearms provisions. Although defendant does not challenge the trial court's finding that he committed sexual battery against plaintiff on 8 October 2013, that act did not involve the use or threatened use of a firearm. Plaintiff herself testified that defendant had never used or threatened to use violence against her or her children. Under these circumstances, we hold that the trial court's findings of fact are insufficient to support the order's requirement that defendant surrender his firearms to the sheriff.
AFFIRMED IN PART; REVERSED IN PART.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from order entered 8 January 2014 by Judge Melinda H. Crouch in New Hanover County District Court. Heard in the Court of Appeals 6 November 2014.